177 So. 332

**ALABAMA POWER CO. v. CITY OF
GUNTERSVILLE et al.**

**8 Div. 835.**

Supreme Court of Alabama.
Nov. 18, 1937.

Rehearing Denied Dec. 18, 1937.

Street & Orr, of Guntersville, and Martin, Turner & McWhorter, of Birmingham, for appellant.

Claud D. Scruggs, of Guntersville, and Stockton Cooke, Jr., of Sheffield, for appellees.

138

Proctor & Snodgrass, of Scottsboro, and Mack Killcrease, of Albertville, amici curiæ.

KNIGHT, Justice.

The bill in this cause was filed by the appellant, the Alabama Power Company, against the city of Guntersville, Ala., and the mayor and councilmen of the city, seeking to enjoin the construction by the city of an electric distribution system, and the issuance and sale of bonds, or other securities, for the purpose of using the proceeds thereof for the construction of the proposed electric distribution system in the city of Guntersville, Ala., and from executing or otherwise entering into any agreement to such end, and, further, that the court enjoin defendant from proceeding with or making effective any act or transaction in connection with, or in furtherance of, the construction of such electric distribution system in the city of Guntersville, Ala.

It is averred in the bill that the complainant, Alabama Power Company, is a corporation duly organized and existing under the laws of the state of Alabama, and is engaged in the business of manufacture and sale to the public of electric energy produced by water and steam as a motor force; that the complainant, through its "electric public utility system," is now serving the public in 65 of the 67 counties of the state, and, through its electric distribution system in the city of Guntersville, is serving the city and its inhabitants with electric service under a valid and unexpired franchise. That the complainant's hydroelectric generating plants affecting navigable waters of the United States have been constructed with the consent and approval of Congress or under licenses granted by the Federal Power Commission, and that the complainant has been specifically authorized by the state of Alabama, through certificates of convenience and necessity issued by the Alabama Public Service Commission, to construct, own, operate, and maintain its generating plants, transmission lines, and facilities and systems in each of the municipalities in which it renders electric service. That

complainant has complied with all laws and regulations necessary to authorize it to own and operate its plants and system. That complainant has invested in its plants and system approximately $180,000,000, and its securities necessary for the financing of its systems were sold to the public and acquired by the holders thereof in good faith, "all in reliance upon such state and Federal authority and grants, and upon the Constitution and laws of the United States and the State of Alabama."

That the complainant, relying on the franchise granted to it by said city on July 5, 1915, and upon the laws and Constitutions of the United States and the state of Alabama, has expended large sums of money, approximately $115,000, in constructing, improving, modernizing, and extending its electric distribution system and facilities in the said city, and is now rendering to the city and its inhabitants, safe, adequate, and efficient electric service at reasonable rates. That the complainant is a taxpayer of the city of Guntersville.

The bill further avers that the mayor and the city council of said city, by ordinance passed and approved July 1, 1937, purported to authorize the construction by or on behalf of the said city of an electric distribution system, and that such ordinance also purported to authorize the issue and sale of revenue bonds in the principal sum of $134,000, and with the proceeds of said bonds to construct an electric distribution system within the limits of said city; that the proposed electric distribution system will in effect parallel and duplicate plaintiff's existing system, and will offer to the inhabitants of said city a service substantially similar to that rendered by complainant's existing system.

It is further averred that the city has instituted no proceeding whereby the amount of damage or injury to complainant's existing system, which will be caused by the construction of defendant's distribution system, may be adjudicated; that the defendant city has made no offer to compensate complainant for the injury or damage which will be caused by the construction and operation of defendant's electric distribution system; and that the city does not intend to compensate the complainant for any such injury or damage so caused.

It is further averred, upon information and belief, that the defendant city has sold, or intends to sell, the bonds authorized by said ordinance at substantially less consider-

ation to the city than the par value of said bonds.

It is further charged that because of its freedom from taxation imposed upon complainant, and by reason of its freedom from regulation to which complainant is subject, and by reason of the fact that a "supply of power subsidized by the United States is available to the defendant city," the said city will be able to offer customers of complainant electrical service at rates lower than complainant can offer, consistent with a fair return upon the property used and useful for service to such customers.

It is further charged that if the defendant city is allowed to proceed with the issue and sale of bonds and the construction of the proposed electric distribution system, the complainant's franchise will, in effect, be revoked, and its value, and the value of complainant's system and other property, as a going business, practically or entirely destroyed.

On information and belief complainant avers that the damage which will be caused will constitute "an unlawful interference with the property and property rights of plaintiff in the defendant city, and any statute or ordinance purporting to authorize such damage without payment to plaintiff of just compensation therefor violates the Fourteenth Amendment of the Constitution of the United States, and sections 6, 22, 23 and 235 of the Constitution of Alabama."

The complainant filed the bill in its capacity as a taxpayer of the city of Guntersville and as a public utility suffering special damages from the acts complained of.

Upon the filing of the bill, an order was made by Judge Hawkins setting September 2d as the date for the hearing of complainant's motion for preliminary injunction. Prior to the submission, complainant amended its bill by making the Universal Electric Construction Company of Alabama a party defendant to the proceeding, and by averring, upon information and belief, that the Universal Electric Construction Company had contracted to purchase the revenue bonds of the defendant city, and had entered, or proposed to enter, into a contract to construct the municipal system. This amended bill also added the averment that the Public Works Board of Alabama had not consented to the issuance and sale of the proposed bonds of the city.

The city, on the hearing of cause for preliminary injunction, filed affidavits of E. H. Couch, mayor of Guntersville, and A. L. Hogan, president of the Universal Electric Construction Company of Alabama. These affidavits disclosed that the city, pursuant to the provisions of, the ordinance, and the result of the election called thereunder, had issued $134,000 par value of bonds; and that these bonds had been sold to the said Universal Electric Construction Company of Alabama at about 95 cents on the dollar; that the money had been paid to the city for the bonds, and work on the construction of the plant had been commenced, and some of the required material had been purchased and paid for. The proceedings of the city council calling and providing for the election under the provisions of act of the legislature, now come to be known as the Carmichael Act (Gen.Acts 1933, Ex.Sess. p. 100); the notice of said election; a copy of the official ballot; a copy of the proceedings of the city council in canvassing the returns and declaring the result of the election favoring the proposed project; a copy of the contract between the city and the construction company for the purchase of the bonds; a copy of the proceedings of the city council authorizing the execution of the contract for the construction of the plant; a copy of the ordinance authorizing the issuance of the bonds and proof of publication of such ordinance as the law directs, were made exhibits to the affidvait of E. H. Couch.

Upon the submission on the sworn bill and amendment, and affidavit filed by the defendant city, the court denied the preliminary injunction, and from this decree the present appeal is prosecuted by the complainant.

We have set forth more of the facts as they appear in the bill as amended than was possibly necessary, but we have been led to do this on account of the importance of this case, and the far-reaching effect any decision that may be rendered in this court may have.

The appellant, in brief, has confined its argument to two propositions, which we quote:

"1. The sale of municipal revenue bonds for construction of an electric system at private sale for a consideration less than the par value of such bonds is illegal and invalidates such bonds.

"2. Just compensation must be made for the property of plaintiff *to be destroyed* by the construction of the proposed electric

system of the City of Guntersville." (Italics supplied.)

We shall discuss these two propositions in the inverse order of their statement.

It must be conceded that the bill discloses that the appellant, at the time of the the filing of its bill for injunctive relief, had and owned an existing, effective franchise to furnish the city of Guntersville, and its inhabitants, electric energy; that at the time the city took steps to construct its own plant, the appellant was fully equipped to furnish the city and its inhabitants all the electric service. required or demanded, and was performing this service adequately, and at reasonable rates.

While the above concession must be made, it must nevertheless be borne in mind that the appellant had no exclusive franchise or right to monopoly of the business of supplying the city with electric service. The city, under constitutional limitations, is denied the right to grant to any person or corporation any exclusive franchise. As well said in the case Birmingham & Pratt Mines Street Railway Co. v. Birmingham Street Railway Co., 79 Ala. 465, 58 Am.Rep. 615, "Free competition in all departments of commercial traffic is justly deemed to be the life of a people's prosperity. The policy of the law, as now declared by our constitution, is as clear in the condemnation of the grant of irrevocable exclusive privileges conferred by franchise, as that of the common law was in the reprobation of pure monopolies, which were. always deemed odious, not only as being in contravention of common right, but as founded in the destruction of trade by the extinguishment of a free and healthy competition.—The Case of Monopolies, 11 Rep. 84."

The appellant recognizes fully that it has no exclusive franchise, but its insistence is, that if the city of Guntersville is permitted to construct and operate its proposed municipal plant under the circumstances as shown in the bill in this cause, such construction and operation will injure, if not completely destroy the appellant's property and property rights, and greatly depreciate its value.

It is well to note here, however, that it is not contended, or even suggested, in appellant's bill that the defendant city, in the construction and operation of its proposed plant, purposes to take, or to enter upon, or disturb in any way, any of the properties of appellant, nor is it made to appear that the city contemplates any physical disturbance of any right that the appellant enjoys in connection with its property. The appellant's sole contention in this respect is, that it will be unable to compete with the city in the sale and distribution of electric energy, since the latter is freed of taxation, and relieved of the regulations which are imposed upon appellant by law; that such competition would greatly depreciate the value of appellant's properties, and would practically destroy its business and its franchise rights granted to it by the city of Guntersville; that the damage which will be caused will constitute an unlawful interference with the property and property rights of plaintiff in the defendant city; and that any statute or ordinance purporting to authorize such damage, without the payment to plaintiff of just compensation therefor, violates the Fourteenth Amendment of the Constitution of the United States, and sections 6, 22, 23, and 235 of the Constitution of Alabama.

The pertinent portion of section 235 of the Constitution of the state, invoked by appellant, is as follows: "Municipal and other corporations and individuals invested with the privilege of taking property for public use, shall make just compensation, to be ascertained as may be provided by law, for the property *taken, injured,* or *destroyed* by the construction or enlargement of its works, highways, or improvements, which compensation shall be paid before such taking, injury, or destruction." (Italics supplied.)

The question here presented, under this phase of the bill, is, Do the facts averred show that it is the purpose of the city of Guntersville, in the construction or operation of its proposed municipal plant, to take, injure, or destroy, the property, or any part of it, of the appellant within the meaning of the quoted provision of section 235 of the State Constitution?

This court, in the case of City Council of Montgomery v. Maddox, 89 Ala. 181, 7 So. 433, 436, had occasion to consider the scope and meaning of the above-quoted provision of the Constitution, and while the case was there left undecided by reason of an equal division of the members of the Court, yet in the later case of Town of Avondale v. McFarland et al., 101 Ala. 381, 13 So. 504, this court adopted the opinion of Justice Somerville as an-

nounced in the Maddox Case. In that case the court was dealing with the question of the liability vel non of the municipality, under the provisions of the Constitution of 1875, article 14, section 7, now section 235 of the present Constitution, for injuries caused to property abutting on a street, by cutting down the sidewalk to the level of the street thereby rendering it less accessible, less desirable as a place of residence, and appreciably diminishing its market value.

In discussing the case, Somerville, J., stated his conclusion in part as follows:

"I have no difficulty, for myself, in reaching the conclusion that, under the provisions of our present Constitution, if the contiguous proprietor of a house and lot is injured, in the sense of being damaged, by the grading of a street, in the mode exhibited by the evidence in this case, and this grading is done by the authority of the municipality, and by reason of this improvement the pecuniary value of such property is diminished, the owner is entitled to be compensated for the damages he has sustained. This rule has the advantage of being plain in meaning, and of easy application in practice. It harmonizes, moreover, in policy with that distinguishing feature of modern republican constitutions which has in view the protection of private rights and personal liberty against the unjust oppression and encroachments of governmental power. * * *

"It can make no difference in the justice of the case if one's property is reduced to one-half of its original value by an actual taking, or by indirectly covering up his premises with earth piled up at his door steps in leveling a street, or in digging down his sidewalk so as to render a ladder necessary for access to the place of his abode or his business."

It will be observed that the court had before it a case involving a physical injury to property, or a physical disturbance with the rights of the owner in the enjoyment and use of his property; and Judge Somerville, in discussing the case, and in reaching his conclusion, had reference to a direct physical injury to the plaintiff's property, or property rights. In that case, the city of Montgomery had, in the prosecution of its work of improving the street, physically disturbed plaintiff's property by cutting down the sidewalk, rendering the property less accessible, and thereby diminishing its market value. The injury was to the property itself, or to the full enjoyment of it by the owner, physical in nature, and constituted a direct physical disturbance of a right which the owner enjoyed in connection with his property. The holding in the Maddox Case has not been departed from; and we think the rule of liability there announced is sound, and we have no desire to depart from it.

In the case of McEachin v. City of Tuscaloosa, 164 Ala. 263, 51 So. 153, 154, which involved the question of the liability of the city of Tuscaloosa for cutting down shade trees situated on the edge of the sidewalk in front of the owner's home, and which were in fact set out by the owner many years before, this court, in an opinion by Anderson, J., observed: "Section 235 of the Constitution of 1901 (section 7, art. 14, of the Constitution of 1875) provides that 'municipal and other corporations and individuals invested with the privilege of taking property for public use, shall make just compensation, to be ascertained as may be provided by law, for property taken, injured or destroyed by the construction or enlargement of its works, highways or improvements,' etc. The language used is plain and unambiguous, and requires compensation to the owner, not only for the property taken or destroyed, but for *property injured, as a result of the construction* or enlargement of the works, highways, or improvements. If injury is done to another's property by a corporation or individual invested with the privilege or exercise of the right of eminent domain, * * * the owner of the adjoining injured property is given a right of action, under our Constitution, notwithstanding he had no such right under the law as it existed previous to the Constitution of 1875." (Italics supplied.)

This case also shows that the injury complained of was a direct physical injury to the property, in that the city removed trees which furnished shade for the owner's property, thereby directly affecting the property. The removal of the trees was a direct physical disturbance of the right of the owner to the full enjoyment of his property.

We find that Illinois in 1870 adopted a constitutional amendment providing that private property should not *be taken or damaged* for public use without compensation. A similar provision was adopted by West Virginia in 1872, by Arkansas and Pennsylvania in 1874, by Alabama, Missou-

ri, and Nebraska in 1875, Colorado and Texas in 1876, Georgia in 1877, and California and Louisiana in 1879. Other states that might be mentioned now have the same provision in their Constitutions.

These provisions in the Constitutions of the several states were adopted, of course, to get away from the harsh' rule that property must be actually taken to entitle the owner to compensation; and it is to be noticed that they have been given a liberal construction by the courts. This is pointed out by Judge Somerville in the Maddox Case, supra, as well as by the courts of the other states, which have adopted this constitutional provision.

As we pointed out above, Illinois adopted the provision in 1870. In 1882, the Supreme Court of that state, in the case of Rigney v. City of Chicago, reported in 102 Ill. 64, had occasion to consider the meaning and effect of the state's eminent domain statute, which provided that: "Private property shall not be *taken* or *damaged* for public use without just compensation." Const. art. 2, § 13. In that case, after a review of many authorities, the court announced its conclusion as follows: "In all cases, to warrant a recovery it must appear there has been some direct physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property, and which gives to it an additional value, and that by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally."

Following this announcement of the rule of liability, the Illinois Supreme Court observed: "The English courts, in construing certain statutes providing compensation for injuries occasioned by public improvements, in which the language is substantially the same as that in our present constitution, after a most thorough consideration of ·the question, lay down substantially the same rule here announced. Chamberland v. West End of London Railway Co., 2 Best & Smith, 605; 110 E.C.L.R. 604; id. 617; Beckitt v. Midland Railway Co., L.R.I.C.P. 241; on appeal 3 C.P. 82; McCarthy v. Metropolitan Board of Works, L.R. 7 C.P. 508. These statutes required compensation to be made where property was 'injuriously affected,' which the English courts construe as synonymous with the word 'damaged.' Hall v. Mayor of Bristol, L.R. 2 C.P., 322; East and West

India Dock Co. v. Gattke, 3 McN. & G. 155." The House of Lords in the McCarthy Case, supra, unanimously sustained the rule adopted by the Illinois Supreme Court.

The Supreme Court of the United States in the case of Chicago v. Taylor, 125 U.S. 161, 8 S.Ct. 820, 31 L.Ed. 638, gave its approval to the interpretation of this constitutional provision, as given by the Supreme Court of Illinois in the case of Rigney v. City of Chicago, supra.

The Supreme Court of Missouri, in the case of Van deVere v. Kansas City et al., 107 Mo. 83, 17 S.W. 695, 28 Am.St.Rep. 396, in construing the constitutional provision of the state of Missouri providing that private property shall not be taken or damaged without just compensation, held that the plaintiff property owner must show that the property itself, or some right or easement connected therewith, is directly affected, and that "it is specially affected."

The Supreme Court of Minnesota, in the case of Stuhl v. Great Northern Ry. Co., 136 Minn. 158, 161 N.W. 501, L.R.A.1917D, 317, in passing upon a case involving the provision of the Constitution of the state of Minnesota (article 1, § 13, as amended in 1896), providing that private property shall not be "taken, destroyed or damaged" without just compensation to the owner, held that this provision gave a right of ·recovery for acts which, under general rules of law, do not constitute actionable wrong; that a recovery of damages for the wrong was not dependent upon *physical injury* to the corpus of the property affected, but to entitle one to recovery there must be shown a *physical disturbance* of a valuable *right in the property.*

The Supreme Court of Utah, in the case of Twenty-second Corporation of the Church of Jesus Christ of Latter-Day Saints v. Oregon Short Line R. Co., 36 Utah, 238–247, 103 P. 243, 23 L.R.A.(N.S.) 860, 140 Am.St.Rep. 819, in discussing the effect of the provision of the Utah Constitution that private property shall not be "taken nor damaged" without just compensation being made therefor, construed this provision to mean that some physical injury or damage to the property itself shall be committed, and does not include something which merely affects the senses of the persons who use the property; that, in order to bring the case within the protection of the Constitution, there must be some physical interference with the property itself,

or with some easement which constitutes an appurtenant thereto.

The Supreme Court of Mississippi, in construing the constitutional provision forbidding the *taking* or *damaging* of private property for public use, except on due compensation being first made to the owner, held that public authority may confer the right to operate a public work, and thus make it lawful, but cannot confer a right to take or damage private property without compensating the owner for its value as taken or damaged, that is, diminished in its market value as property, by some *physical invasion* of it or disturbance of some right of the owner in relation thereto, whereby its market value is diminished. King v. Vicksburg R., etc., Co., 88 Miss. 456, at page 485, 42 So. 204, 6 L.R.A.(N.S.) 1036, 117 Am.St.Rep. 749.

The Supreme Court of Virginia, in the case of Swift & Co. v. Newport News, 105 Va. 108, 52 S.E. 821, 825, 3 L.R.A.(N.S.) 404, cited approvingly the case of Chicago v. Taylor, 125 U.S. 161, 166, 8 S.Ct. 820, 31 L.Ed. 638, in which the rule was there applied that, to present a case of liability, it must appear that "there has been some physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property, and which gives to it additional value, and that by reason of such·disturbance he has sustained a special damage with respect to his property, in excess of that sustained by the public generally." The Virginia Constitution forbids the *taking* or *damaging* of private property for public use, without just compensation.

The Supreme Court of California (where the Constitution of that state provides that "Private property shall not be *taken* or *damaged* for public use without just compensation" [Const.1879, art. 1, § 14]), in the case of Eachus et al. v. Los Angeles Consolidated Electric Railway Company, 103 Cal. 614, 37 P. 750, 42 Am.St.Rep. 149, cited with approval the rule declared in Rigney v. City of Chicago, 102 Ill. 64, and holding that the damage for which compensation is to be made is a damage to the property itself, or some right connected therewith, and does not include a mere infringement of the owner's personal pleasure or enjoyment.

The Supreme Court of Kentucky, a state which has a constitutional provision requiring just compensation for property taken, injured, or destroyed, in the case of City

of Henderson v. McClain, 102 Ky. 402, 43 S.W. 700, 39 L.R.A. 349, gave its approval to the rule of liability declared in the case of Rigney v. Chicago, supra.

In Ruling Case Law, volume 10, § 147, p. 167, it is stated: "That the rule which has received the most support in actual application is that compensation is required not only when there is an injury that would be actionable at common law, but also in all cases in which it appears that there has been some *physical disturbance* of a right, either public or private, which the owner of a parcel of land enjoys in connection with his property and which gives to it an additional value, and that by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally." It will be noted that this is the rule declared in Rigney v. City of Chicago, supra, and enforced in Chicago v. Taylor, supra.

In Corpus Juris, volume 20, § 139, p. 674 et seq., it is stated that the rule requiring payment of compensation for property damaged or injured includes "all damages or injuries arising from the exercise of the right of eminent domain which cause a diminution in the value of private property, whether this results directly to property or is but an interference with the right which the owner has to the legal and proper use of the same. It is generally held, however, that the interference which will require compensation must be a physical interference with the property itself, or with the right which the owner has to the legal and proper use of the same, and not merely such as causes personal inconvenience or annoyance, not affecting the property in a special and peculiar manner." This rule, as stated by Corpus Juris, is sustained by the decisions of the Supreme Courts of many of the states of the Union.

We think the proper rule, deducible from the foregoing authorities, is, that just compensation must be made by municipal corporations and other corporations and individuals invested with the privilege of taking property for public use, when, by the construction or enlargement of "its" works, highways, or improvement, there will be occasioned some direct physical disturbance of a right, either public or private, which the owner enjoys in connection with his property, and which gives it an additional value, and that by reason of such disturbance he has sustained some special damage

·with respect to his property in excess of that sustained by the general public.

It is not here contended by appellant that any of its property has been or will be taken by the defendant city in the construction and operation of its proposed plant, nor that there will be any physical disturbance of its property rights therein, but its sole contention in this respect is: That "because power subsidized by the United States is available to the proposed municipal system, and because the city is free from taxation and regulation to which plaintiff is subject, the city is able to offer lower rates to citizens of the city than plaintiff can offer consistent with a fair return on its property; and that as a proximate consequence the value of plaintiff's property in such city will be practically or entirely destroyed by the proposed construction of the electric distribution system."

It is conceded that the city could have granted the franchise to an individual, or to some corporation to construct an electric plant in the city of Guntersville, and to operate the same in competition with appellant without incurring any liability to the appellant for any diminution of the value of its plant, or in the returns therefrom by reason of the construction and operation of the competing plant, but that the city itself cannot embark upon this undertaking, in competition with the appellant. This for the sole reason, and upon the sole basis, that the city will be able to secure electric power from the United States, and, being free from taxation and regulation to which the appellant is subject, the city will be able to offer cheaper rates, and thereby will be able to take from appellant its customers.

It may be that competition with the city may prove ruinous to appellant's business in the city of Guntersville, but this is not sufficient to justify a holding that the city cannot proceed in its proposed undertaking, having full legislative authority to that end. Appellant's appeal must be made, under the circumstances, to another tribunal; that of the people and their representatives in the Legislature.

The Supreme Court of the United States, in the case of Joplin v. Southwest Missouri Light Company, 191 U.S. 150, 24 S.Ct. 43, 44, 48 L.Ed. 127, in an opinion by Justice McKenna, in passing upon the right of the city of Joplin, Mo., to construct and operate a light plant, and to enter into competition in the generation and distribution of electric energy to the inhabitants of the city of Joplin, with a utility company to which said city had granted a franchise, made the following observation: "It is by implication from the statute and the ordinance passed under it, not from explicit expression of either, that the conclusion is deduced that the city is precluded from erecting its own lighting plant, and yet it is conceded that the grant to the appellee is not exclusive. That is, it is conceded the city has not exhausted its power under the statute by the grant held by appellee, but may make another to some other person than the appellee. In other words, that the city may make a competitor to appellee, but cannot itself become such competitor. The strength of the argument urged to support the distinction is in the consideration that competition by the city would be more effective than competition by private persons or corporations—indeed, might be destructive. The city, it is further urged, could be indifferent to profits and could tax its competitor to compensate losses. But this is speculation and it may be opposed by speculation, and there are, besides, countervailing considerations. The limitation contended for is upon a governmental agency, and restraints upon that must not be readily implied. The appellee concedes, as we have seen, that it has no exclusive right, and yet contends for a limitation upon the city which might give it (appellee) a practical monopoly. Others may not seek to compete with it, and if the city cannot, the city is left with a useless potentiality, while the appellee exercises and enjoys a practically exclusive right. There are presumptions, we repeat, against the granting of exclusive rights, and against limitations upon the powers of government."

And the Supreme Court of the United States, in the case of Skaneateles Waterworks Company v. Village of Skaneateles, 184 U.S. 354, 22 S.Ct. 400, 404, 46 L.Ed. 585, in an opinion by Mr. Justice Peckham, observed: "There is no implied contract in an ordinary grant of a franchise, such as this, that the grantor will never do any act by which the value of the franchise granted may in the future be reduced. Such a contract would be altogether too far reaching and important in its possible consequences in the way of limitation of the powers of a municipality, even in matters not immediately connected with water, to be left to implication."

As we see it, under the phase of the bill now under discussion, only a question of loss of returns and profits from its business, incident to competition on the part of the city, is presented. That the city has ample statutory authority to construct and operate a lighting plant, no one will doubt for a moment. That the city purposes, in the construction of its plant, and in the prosecution of its business of supplying electricity to the inhabitants of the city, *to take, injure* or *destroy* the property of the appellant, giving to the terms their proper legal meaning, is not charged. The embarking upon a competitive business with appellant, without any physical disturbance of appellant's property, or any interference with the right the appellant has to the legal and proper use of the same, is not such an injury to, or destruction of, property as falls within the protection of section 235 of the Constitution.

It follows, therefore, that there is no equity in this phase of the bill, and appellant was not entitled to injunctive relief based thereon.

This brings us to a consideration of appellant's first proposition, viz.: "The sale of municipal revenue bonds for construction of an electric system at private sale for a consideration less than the par value of such bonds is illegal and invalidates such bonds."

It appears that the bonds in question were sold at private sale and for less than their par value. It also appears that the bonds had been sold, and the money arising therefrom had been paid over to the city, and a part of it expended in the purchase of material to be used in the construction of the plant when the bill was filed in this cause. These bonds were sold to the Universal Electric Construction Company of Alabama, who in turn sold the same to Ballard Hassett & Co. in Des Moines, Iowa, for value, who paid for the same. Ballard Hassett & Co. are not made parties to this suit. Thus it appears that at the time the bill was filed the issuance and sale of the bonds were accomplished facts.

In cases like the present, injunction could operate prospectively only. McElderry v. Abercrombie, Supt. of Education, et al., 213 Ala. 289, 104 So. 671; City of Alma v. Henry Loeher, 42 Kan. 368, 22 P. 424; Miller et al. v. Park City et al., 126 Tenn. 427, 150 S.W. 90, Ann.Cas.1913-

E, 83; Charles Holden v. City of Alton et al., 179 Ill. 318, 53 N.E. 556; 44 C.J., § 4630, p. 1437, and Simpson v. Nacogdoches (Tex.Civ.App.) 152 S.W. 858. As we see it, the case made by the bill in this respect has become moot. But regardless of whether the question has become moot, their sale to, and purchase by, Ballard Hassett & Co. makes these purchasers necessary parties to any bill which seeks to invalidate the proceedings under which they became the owners of the bonds, and the court will not issue any injunction, or enter any order or decree affecting the bonds, or the proceeds, in the absence of the said bondholders. They are entitled to be heard, and especially so in view of the fact that the city has confessedly spent some several thousand dollars of the proceeds of the bonds. So in any event, on this phase of the bill as filed, the circuit court properly refused to issue the preliminary injunction.

The conclusion here reached is that the decree of the circuit court denying the preliminary injunction is due to be affirmed. It is so ordered; and the injunction issued in this court is dissolved.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.