4 So.2d 161

### McGOWIN et al. v. CITY OF MOBILE et al.
### I Div. 107.

Supreme Court of Alabama.
Oct. 9, 1941.

Armbrecht, Inge, Twitty & Jackson, of Mobile, for appellants.

Smith & Johnston, of Mobile, amici curiæ.

Harry Seale, of Mobile, for appellees.

LIVINGSTON, Justice.

The bill of complaint in this cause is rested on the theory that the property of complainants is being taken, injured or destroyed by the proposed improvement of Government Street in the city of Mobile, Alabama, a street abutting complainants' property, without compensation being first paid therefor, in violation of section 235 of the Constitution of Alabama.

 Although the lower court denied the injunctive relief prayed for, it has the power to so mold its decree as to award damages in lieu of such relief if the exigencies of the case demand. Mobile County v. Barnes-Creary Supply Co., 225 Ala. 127, 142 So. 72, and cases cited.

Admittedly, the principal question here involved is complainants' right to compensation for the taking, injury to or destruction of their property. The pertinent provisions of section 235, supra, are as follows: "Municipal and other corporations and individuals invested with the privilege of taking property for public use, shall make just compensation, to be ascertained as may be provided by law, for the property taken, injured, or destroyed by the construction or enlargement of its works, highways, or improvements, which compensation shall be paid before such taking, injury, or destruction."

The bill as amended, the sufficiency of which is questioned by the demurrers of appellees, alleges in substance that N. Floyd McGowin, Earl M. McGowin and Nicholas S. McGowin, as trustees under the will of J. Greeley McGowin, own a lot or parcel of land in the business section of the city of Mobile, which may be described as the property located at the southeast corner of the intersection of Government Street and St. Emanuel Street, on which now stands a

three-story brick building or business house used by the Alabama Hardware Company (tenants of the owners) as a retail hardware establishment: that the lot and building front 73 feet, more or less, on Government Street, with a depth of approximately 60 feet along the eastern boundary line of St. Emanuel Street. And, further, that the improvement in Government Street, which is made the basis of complainants' claim for damages, is the construction of Bankhead tunnel under Mobile River, with its eastern terminus or entrance on Blakely Island and its western terminus or entrance in the center of Government Street at a point approximately in line with the eastern boundary line of St. Emanuel Street, and the western boundary line of complainants' property. It is further averred that the city proposed to excavate the center of Government Street immediately in front of complainants' property, the excavation to run from the eastern boundary of St. Emanuel Street (in an easterly direction) through the entire block on which complainants' property is situated. The excavation to be about 30 feet wide and of increasing depth from the level of the eastern boundary line of St. Emanuel Street to the mouth of the tunnel, and will be made for the purpose of making a permanent change in the center 30 feet of Government Street; and there will be contructed in the center of Government Street a downward approach into the tunnel. The portion of the excavation to be constructed directly in front of complainants' property is to remain uncovered, but there is to be constructed a concrete wall on either side of the excavation, such wall to be approximately 4 feet in heighth above the present level of Government Street, and running the entire length of the block on which complainants' property is situated, on which walls at specified intervals will be placed light poles and lights. That a toll or fee will be charged for the use of the tunnel by the public. That Government Street is, and has been for a long period of time, approximately 70 feet in width from curb to curb in front of complainants' property, and has been for a long period of time unobstructed. That the construction of the tunnel, as aforesaid, will leave on both sides of the tunnel an unobstructed street or passage way approximately 20 feet in width. It is further alleged as follows: "Your complainants further aver that without the construction of said tunnel the said complainants' property is and will be worth in excess of $40,000, but that if said tunnel is constructed, as herein set out, said property will be diminished in value by approximately the sum of $20,000; that the contemplated construction of said tunnel has already prevented the complainants from procuring a lease on said property for a term of more than one year, and complainants have been forced to rent said property for substantially less rental than the complainants could otherwise have rented the same without the construction of said tunnel as herein set out; that in the event the said tunnel and other structures herein described are allowed to be constructed and to remain immediately in front of the complainants' property such structure will constitute changes in the grade of that part of said street occupied thereby, and that part of said street will no longer be open to the public generally for the free use thereof and said structure will seriously and substantially impair the ingress and egress to and from complainants' property and Government Street, and interfere with vehicular travel and travel of pedestrians to and from said property, as well as pedestrians crossing along said street, and said structures will seriously and substantially obstruct the view of complainants' property and of merchandise now being displayed and to be displayed therein, which persons using Government Street (both pedestrian and vehicular travel) now have, and that said structures to be superimposed on said Government Street will be unsightly and will seriously and substantially diminish the desirability of the complainants' property as located for business or commercial establishments; that the construction and maintenance of said tunnel and other structures will create a serious and substantial traffic hazard and traffic congestion at the intersection of said Government and St. Emanuel Streets immediately in front of complainants' property, and the maintenance of said tunnel will cause a diversion of traffic which presently passes on or otherwise use Government Street in front of said property * * * and no compensation has been paid to complainants for said taking or injury, and complainants aver that no condemnation proceedings have been instituted by said respondent city for the purpose of condemning said property or any of the same, and no such proceedings are contemplated by said city."

█ It would serve no good purpose to review the authorities defining the rights

and liabilities created by section 235 of the Constitution of Alabama. Such a review was made in the opinion of Mr. Justice Knight in the case of Alabama Power Co. v. City of Guntersville, 235 Ala. 136, 177 So. 332, 339, 114 A.L.R. 181, and in which the rule was stated as follows: "We think the proper rule, deducible from the foregoing authorities, is, that just compensation must be made by municipal corporations and other corporations and individuals invested with the privilege of taking property for public use, when, by the construction or enlargement of 'its' works, highways, or improvement, there will be occasioned some direct physical disturbance of a right, either public or private, which the owner enjoys in connection with his property, and which gives it an additional value, and that by reason of such disturbance he has sustained some special damage with respect to his property in excess of that sustained by the general public."

This is so regardless of whether or not the construction or enlargement of its works, highways or improvement constitutes an additional servitude.

The case of Alabama Power Co. v. Guntersville, supra, can be readily distinguished from the case here considered. That case held that the creation of competition, which may prove injurious, was not sufficient to justify a holding that the city could not proceed in its proposed construction of an electric distribution system,—the city having full authority to that end. That the embarking upon a competitive business with appellant, without any physical disturbance of appellant's property, or any interference with the right the appellant has to the legal and proper use of the same, is not such an injury to or destruction of property as falls within the protection of section 235 of the Constitution.

In the case of McEachin v. City of Tuscaloosa, 164 Ala. 263, 51 So. 153, 154, Chief Justice Anderson said: "Section 235 of the Constitution of 1901 (section 7, art. 14 of the Constitution of 1875) provides that 'municipal and other corporations and individuals invested with the privilege of taking property for public use, shall make just compensation, to be ascertained as may be provided by law, for the property taken, injured or destroyed by the construction or enlargement of its works, highways or improvements,' etc. The language used is plain and unambiguous, and requires compensation to the owner, not only of the property taken or destroyed, but for *property injured, as the result* of the construction or enlargement of the works, highways, or improvements. If injury is done to another's property by a corporation or individual invested with the privilege or exercise of the right of eminent domain, whether in acquiring the property for public use or in the enlargement or improvement of the property already acquired, the owner of the adjoining injured property is given a right of action, under our Constitution, notwithstanding he had no such right under the law as it existed previous to the Constitution of 1875." (Italics supplied.)

As we view it, the bill here considered alleges, not merely an interference as causes personal inconvenience or annoyance, but the direct physical disturbance of a right which the owners enjoy, in connection with their property, and which gives it an additional value, and by reason of such disturbance they have sustained some special damage with respect to their property in excess of that sustained by the general public.

In pleading special damages all of the essential elements necessary to be proved to establish such damages must be set forth, and must be so pleaded as to advise respondents of what they are to meet at the trial. The facts showing how the special damages claimed arose must be stated, although it is not required that evidence be pleaded.

As a general rule where the allegations of special damages are definite enough to apprise the adverse party fully of the probable evidence which will be introduced by complainant and to enable them to prepare their defense, they are sufficient.

We are of the opinion, and so hold, that the allegations of the bill are sufficient.

It results therefore that the decree of the lower court is reversed and the cause remanded.

Reversed and remanded.

GARDNER, C. J., and BOULDIN and FOSTER, JJ., concur.