LAS VEGAS VALLEY WATER DISTRICT, A QUASI-
MUNICIPAL CORPORATION, APPELLANT, *v.* THEO-
DORE MICHELAS, DBA MICHELAS WATER
COMPANY, RESPONDENT.

No. 4339

April 7, 1961

360 P.2d 1041

(Petition for rehearing denied May 31, 1961.)

*McNamee and McNamee* and *Franklin Rittenhouse,*
of Las Vegas, for Appellant.

*Foley Brothers,* of Las Vegas, for Respondent.

## OPINION

By the Court, BADT, C. J.:

Respondent agrees with appellant's statement of the legal issue presented to this court, adding only the last phrase as italicized to appellant's statement of the issue. It is as follows:

"May the Appellant, Las Vegas Valley Water District, supply water service in an area where Respondent may and does already supply water service under a certificate of public convenience and necessity issued by the Nevada Public Service Commission *without the payment of just compensation to Respondent?*"

Likewise, in pre-trial proceedings, it was ordered, pursuant to stipulation, as follows: "That the questions of law shall be to determine whether or not the plaintiff may invade the territory so held by franchise by the defendant, or whether it can only invade the territory through the [exercise] of right of eminent domain."

In the same pre-trial proceedings the court ordered that the Public Service Commission of the State of Nevada might intervene and that its filing of points and authorities would be tantamount to filing a petition in intervention and an order granting intervention. A copy of such order was served upon the Public Service Commission. The commission did not take advantage of the court's order.

We refer to appellant as the Water District and to the respondent as Michelas. The proceedings were initiated in the court below by the complaint of the Water

District, alleging that it was a "quasi-municipal corporation" organized under what is hereafter referred to as the Act of 1947, and engaged in the business of selling water to persons living in the Las Vegas Valley Water District, Clark County, Nevada; that Michelas was engaged in the business of selling water in a portion of the City of Las Vegas and had "a nonexclusive right" to sell water, said right being issued by the Public Service Commission of Nevada; that there were difficult questions of law pertaining to the rights and duties of the parties and that a declaratory judgment was sought defining same, and for further relief. Michelas answered, alleging that in 1941 he received "an exclusive right" to operate a water service in the six named blocks of the Meadows Addition to the City of Las Vegas.

As a first counterclaim he alleged that he had expended in excess of $300,000 in the acquisition of pumps, wells, real property, machinery, and other equipment "for the purpose of serving water users in his exclusive territory"; that the Water District had, with full knowledge of plaintiff's grant from the Public Service Commission knowingly, willfully, and deliberately, without first "seeking the utilization of the rights" conferred by the Act of 1947, entered upon Blocks 15 and 16 of the said Meadows Addition (for the servicing of which blocks he had obtained a certificate of convenience and necessity from the Public Service Commission), and unlawfully installed water mains and service connections within the area being then serviced by Michelas; that by reason thereof defendant had been damaged in the sum of $28,800, "the value of the loss of profits directly resulting by reason of plaintiff's illegal acts"; that plaintiff's acts were malicious and in gross and wanton disregard of defendant's rights and privileges, by reason whereof defendant demanded exemplary damages in the sum of $50,000.

As a second counterclaim, Michelas likewise asserted that a controversy existed between the parties; that Michelas had been granted by the commission "the exclusive right" to furnish water in the disputed area; that the Water District had no right to service such disputed area other than under the Act of 1947; that it had

deliberately, willfully, and knowingly neglected and failed to follow the provisions of said act, and that Michelas would suffer irreparable injury unless the Water District should be restrained; that he had no adequate remedy other than injunctive relief. He prayed for a restraining order, $28,000 compensatory damages, $50,000 exemplary damages, and further relief.

Michelas' references to the failure of the Water District to act within the provisions of the Act of 1947 had reference to paragraph 7 of section 1 of said act, reading as follows:

"7.    To have and exercise in the State of Nevada the right of eminent domain, either within or without said district, and in the manner provided by law for the condemnation of private property for public use, to take any property necessary to carry out any of the objects or purposes of this act, whether such property be already devoted to the same use by any district or other public corporation or agency or otherwise, and to condemn any existing works or improvements in said district now or hereafter used. The power of eminent domain vested in the board of directors of said district shall include the power to condemn, in the name of the district, either the fee simple or any lesser estate or interest in any real property which said board by resolution shall determine is necessary for carrying out the purposes of this act. Such resolution shall be prima-facie evidence that the taking of the fee simple or easement, as the case may be, is necessary."

The order of the Public Service Commission relied upon by Michelas, after caption reciting the proceeding, reads as follows:

## "O R D E R

"IT APPEARING There has been filed with the Commission an application by THEODORE MICHELAS for a certificate of public convenience and necessity to operate a water service in Blocks 4, 12, 13, 14, 15 and 16, in the Meadows Addition to the City of Las Vegas; and

"IT FURTHER APPEARING That there is no such service

now being given in said District; and by granting said application would be in the public interest,

"IT IS ORDERED That the application of THEODORE MICHELAS for a certificate of public convenience and necessity to operate a water service in Blocks 4, 12, 13, 14, 15 and 16 in the Meadows Addition to the City of Las Vegas, be and the same is hereby granted.

"Dated: Carson City, Nevada
April 28, 1941"

(1) It is advisable at this point to dispose of the categorical statement of Michelas that the foregoing order vests in him an exclusive franchise to render water service in the area described as against the similar categorical statement by the Water District that this is a non-exclusive franchise. Patently, on its face, the franchise given in the order granting to Michelas a certificate of public convenience and necessity to operate his service in the six blocks described is not exclusive. However, the matter may not so simply be dismissed. Michelas insists that it is exclusive in this sense, namely, that before any other person or corporation may invade the territory described, such person or corporation must likewise obtain from the commission a certificate or permission authorizing such entry, and that to accomplish this a petition would have to be filed, a hearing advertised and held, and that an opportunity for objection be given, to the end that the commission might determine whether the convenience and necessity of the public would be best served by granting such petition; further, that if at such hearing Michelas could show that he had in all respects complied with any and all rules, regulations, and orders of the commission, that the rates charged by him were reasonable, that the services rendered by him in furnishing water adequately supplied the needs of the district involved, that the public convenience and necessity required no further service, that his large investment had been made pursuant to the certificate granted him by the commission, and that he

would be irreparably damaged by an unnecessary and unwarranted permit to another applicant, he would be entitled to an order denying such second petition and, in the event of a ruling adverse to him, to have access to the district court and to the supreme court for review.

This contention on behalf of Michelas leads us to the statutes involved. We turn, first then, to what we have referred to as the Act of 1947, and it must be first emphatically stated that Michelas does not attack the validity or constitutionality of such act or of any section, subsection, paragraph, or part thereof. The act is found in Stats. 1947, p. 553, Chapter 167. Although it is entitled "An Act to create a water district in the Las Vegas valley, Clark County, Nevada; * * *," both parties refer to it as the "enabling act." This indeed it is. Section 1 provides that a "water district *may be* created in the Las Vegas valley, as hereinafter provided for, for the following objects and purposes:" (Emphasis added.) This is followed by subparagraphs numbered 1 to 14, which provide for such matters as having perpetual succession, the right to sue and be sued in its name, to adopt a seal, to take by grant, purchase, etc., and to dispose of real and personal property, to acquire rights of way, easements, privileges, etc., and to maintain and operate works and improvements to carry out its purposes, to store surface and underground waters, to appropriate and acquire water and water rights, import water into the district, to commence, defend, or intervene in litigation concerning water or water rights, to exercise the right of eminent domain, to acquire or condemn lands, water rights, improvements, reservoirs, and other works owned by others, to enter into agreements with the United States or any state, county, or district, public or private corporations, or individuals with reference to the acquisition, use, and administration of waters (carried out in great detail), to incur indebtedness and issue bonds, to cause taxes to be levied and collected for paying its obligations during its organizational stage, to do all things necessary for the exercise of its powers, and to supply water to the United States, the State of Nevada, Clark County, and any city, town, corporation,

etc., within Clark County, Nevada, *"for an appropriate charge,* consideration, or exchange made therefor." (Emphasis added.)

Section 2 of the act provides the procedure to establish the Las Vegas Valley Water District by the filing of a petition praying for its organization, with the board of county commissioners of Clark County, with bond, notice, and publication thereof. Section 3 and following provide for a hearing on the petition, the granting thereof, the calling of an election, the nomination and election of officers, their qualifications, provisions for polling places, canvass of votes, terms of office, notices of election, appointment of inspectors, registration of electors and their qualifications, regulation of poll books, and many incidental provisions concerning the election. Organization meetings are provided for and the filling of vacancies on the board of directors.

Sections 9 and following provide the duties of the directors and of the treasurer, remuneration for the services of the directors, limitations on their powers, the sale of bonds and the nature and conditions thereof, and the requirement for the collection of rates and charges for services in such amounts as shall be sufficient to pay operating expenses and provide a sinking fund for the payment of interest and principal on the bonds.

Section 16 contains the following provision: "No board or commission other than the governing body of the district shall have authority to fix or supervise the making of such rates and charges."

Section 19, as amended,[1] reads in part as follows: "This act shall in itself constitute complete authority for doing of the things herein authorized to be done. The provisions of no other law, either general or local, except as provided in this act, shall apply to doing of the things herein authorized to be done, and no board, agency, bureau or official, other than the governing body of the district shall have any authority or jurisdiction over the doing of any of the acts herein authorized to be done.  *  *  *"

[1]Stats. 1956–1957, p. 778, Ch. 402.

The validity of these provisions being conceded by Michelas, it becomes evident that the certificate of public convenience and necessity granted to him was not exclusive even in the sense contended for by him; that the rights created in the Water District under the Act of 1947 were not governed by any other acts of the legislature, and in particular, the utilities act requiring an application to the Public Service Commission and vesting rights of regulation and of rate fixing in that commission. (NRS, Chapter 704, "Regulation of Public Utilities Generally")[2] We are compelled to reject Michelas' insistent and repeated contention that not only the Act of 1947 but Chapter 37 NRS on the subject of eminent domain (NRS 37.030 and NRS 37.010) require condemnation and the attending compensation. This is simply not so. All the statutes referred to are permissive in their nature and do not require condemnation. But even if such be the case, argues Michelas, there may not be an actual taking of property without resorting to condemnation and compensating the condemnee. This leads us to the crux of Michelas' support of the district court's judgment, namely, that there has been a taking by the Water District of Michelas' "property" without compensation.

(2) Michelas cites numerous authorities to the effect that the right of a person whose property is taken for public use to be compensated therefor is guaranteed by both the state and federal constitutions. This of course must be conceded. Michelas then asserts that the rule recited in some of the cases that "there must be a taking altogether, a seizure, a direct appropriation and dispossession of the owner, such a taking as divests the owner of title and control of the property taken, and an unqualified appropriation of it to the public," is against the weight of authority, citing Lea v. Louisville & N. R.

---

[2] "704.210 Commission's authority to supervise, regulate public utilities. The commission shall have full power:
"1. To prescribe classifications of the service of all public utilities, and fix and regulate the rates therefor. * * *
"3. To make just and reasonable regulations for the apportionment of all joint rates and charges between public utilities."

Co., 135 Tenn. 560, 188 S.W. 215; 6[A] Fletcher Cyclopedia Corporations, [Perm.Ed. 592, sec. 2918], and cases therein cited; also Wilmington R. R. Co. v. Reid, 13 Wall. 264, 80 U.S. 264, 20 L.Ed. 568, and Greenwood v. Union Freight R. Co., 105 U.S. 13, 26 L.Ed. 961, and other cases, to the effect that a franchise is property, which cannot be taken for public use without compensation. Again conceding the law as enunciated in these cases, we are confronted with the fact that in the instant case there has been no such "taking" as considered in those cases. The only taking of Michelas' property asserted by him is that the Water District in servicing the same district serviced by Michelas damages and destroys Michelas' franchise. If this be so, it is damnum absque injuria. Knoxville Water Co. v. Knoxville, 200 U.S. 22, 26 S.Ct. 224, 228, 50 L.Ed. 353, similar in virtually all respects to the instant case, except that in the Knoxville case the City of Knoxville itself made the later installation of water works, while in the present case the installation was made pursuant to direct authority of the legislature. There, as here, the Knoxville Water Company had been granted a franchise to furnish water for the city (for a period of 30 years) under a stipulation that it would not during that period grant to any person or corporation the same privileges it had given to the water company. The city did not bind itself not to install its own waterworks. The court first disposed adversely of the contention that the city's installation of its own waterworks was a violation of its contract. It first held: " 'The doctrine is firmly established that only that which is granted in clear and explicit terms passes by a grant of property, franchises or privileges in which the Government or the public has an interest. Statutory grants of that character are to be construed strictly in favor of the public, and whatever is not unequivocally granted is withheld; nothing passes by mere implication.' " Citing other cases, the court went on: "We have never departed from or modified these principles, but have reaffirmed them in many cases." (See cases cited in note 50 L.Ed. 359.) It will be noted that this likewise disposes of Michelas' contention that the grant to him, while not exclusive in its terms, was impliedly so.

The United States Supreme Court in the Knoxville case then turned its attention to the contention that the city's installation destroyed the value of the water company's franchise, thus destroying a property right which it could not constitutionally do without making compensation. Citing a number of cases, the court said: "And it may be that the erection and maintenance of gas works by the city at the public expense, and in competition with the plaintiff, will ultimately impair, if not destroy, the value of the plaintiff's works for the purposes for which they were established. But such considerations cannot control the determination of the legal rights of parties." Quoting from Helena Water Works Co. v. City of Helena, 195 U.S. 383, 25 S.Ct. 40, 43, 49 L.Ed. 245, the court said: " 'It is doubtless true that the erection of such a plant by the city will render the property of the water company less valuable and, perhaps, unprofitable, but if it was intended to prevent such competition, a right to do so should not have been left to argument or implication, but made certain by the terms of the contract.' "

In Skaneateles Water Works Co. v. Skaneateles, 184 U.S. 354, 22 S.Ct. 400, 405, 46 L.Ed. 585, it was likewise held that while the installation of its own waterworks by the city may have seriously impaired the value of the water company's property, it had "taken none of it."

In City of Tucson v. Polar Water Co., 76 Ariz. 126, 259 P.2d 561, we again have installation by the city of its own waterworks where there had been a prior certificate of convenience and necessity to the water company, and the city extended its boundaries and made its connections to the area in which the water company had been franchised. There, as here, the water company sought injunctive relief, but the court held that any damage suffered by the plaintiff water company as a result of the city's installing of its own waterworks was damnum absque injuria. In accord, Puget Sound Power & Light Co. v. City of Seattle, 291 U. S. 619, 54 S.Ct. 542, 78 L.Ed. 1025; Alabama Power Co. v. Guntersville, 235 Ala. 136, 177 So. 332, 114 A.L.R. 181. Many cases of similar import arose out of the use by a number of cities

of T.V.A. power, and all held to like effect as the foregoing. Illustrative cases are cited in the footnote.[3]

The result of all these cases is that the holder of the prior nonexclusive franchise may not under such circumstances recover damages or prevent the competition by injunction.

Michelas seeks to distinguish the Knoxville and other cases above referred to, because in each of such cases it was the city itself that installed the competing utility, an activity in which the city was entitled to engage unless it had bound itself otherwise by contract, while in the instant case the competition is entered into by the Water District created under the Act of 1947. We do not recognize this as a distinction affecting in any way the principles of law involved. Other distinctions are pointed out by Michelas, but we do not find the same important.

(3) Michelas refers to the general act regulating public utilities (NRS 704.010–704.810) and particularly to NRS 704.330 which requires all public utilities to obtain a certificate of public convenience and necessity from the Public Service Commission and more particularly to NRS 704.340, which reads: "A municipality constructing, leasing, operating or maintaining any public utility shall not be required to obtain a certificate of public convenience." He then points out that in White Pine Power District v. Public Service Commission, 76 Nev. 497, 358 P.2d 118, 119, this court, after quoting White Pine Power District v. Public Service Commission, 76 Nev. 263, 352 P.2d 256, held that the appellant power district, not having been granted a certificate from the Public Service Commission of Nevada, could not maintain its suit for an injunction. There we said: "Only municipalities * * * maintaining any public utility are exempt from the provisions of

---

[3]Mississippi Power Co. v. City of Aberdeen, 5 Cir., 95 F.2d 990; West Tennessee Power & Light Co. v. City of Jackson, 6 Cir., 97 F.2d 979; Metropolitan-Edison Co. v. Ickes, D.C., 22 F.Supp. 639; Southwestern Gas & Electric Co. v. City of Texarkana, 5 Cir., 104 F.2d 847; Kentucky-Tennessee Light & Power Co. v. City of Paris, 173 Tenn. 123, 114 S.W.2d 815, 118 A.L.R. 1025.

NRS 704.330. NRS 704.340. A municipal power district is not a municipality * * *. We therefore conclude that municipal power districts are subject to the provisions of NRS 704.330." From this, Michelas concludes that as Las Vegas Valley Water District is not a municipality it too may proceed only when armed with a certificate from the commission. This, however, is conclusively rejected by the provisions of sec. 19 of the Act of 1947, above quoted, which completely and effectively foreclose the commission of any authority in the matter.

But Michelas further argues that the power district act, NRS, Ch. 312, particularly NRS 312.030, contains the identical provision found in the Act of 1947 to the effect that the act is complete in itself irrespective of any other special or general act of the legislature, and that if the White Pine Power District had no powers without a certificate from the Public Service Commission, it must follow that the Las Vegas Valley Water District had no powers without a certificate. However, there is a clear distinction. The power district act, under which the White Pine Power District was organized, must of necessity be construed in connection with the general act regulating public utilities. The "identical provision" referred to is limited to that found in both the power district act (NRS 312.030) and in the Act of 1947 (sec. 19) as the latter act was originally written. That language was later drastically enlarged by the legislature, as quoted by us above as being part of sec. 19, precluding the exercise of any power by the Public Service Commission. In addition the restrictive provisions of sec. 16 were retained. This is entirely consistent with the language used by us in White Pine Power District v. Public Service Commission, 76 Nev. 497, 358 P.2d 118.

In addition, the Act of 1947 contains sec. 16 providing specifically that "no board or *commission* * * *," other than the governing body of the water district shall

have authority to fix or supervise the water rates provided for in the Act of 1947. This clear language of sec. 16 negatived the authority of the Public Service Commission to control the rates of the Las Vegas Water District.

Even more conclusive is the following. That part of the power district act (now NRS 312.030) which provides that it is complete in itself and controlling and that no other special or general act shall apply, *except as provided in this chapter,* is followed by numerous provisions vesting control in the Public Service Commission. A certified copy of the original resolution reciting the advisability of creating the district must be filed in duplicate with the commission. NRS 312.060, Sub. 1. The commission must then make an investigation. 312.060, Sub. 2. The commission must then approve or disapprove the proposed creation of the district. 312.060, Sub. 3. It must find, before approval, that the public convenience and necessity require the creation of the district and that it is economically sound and desirable. 312.060, Sub. 3(a), (b). The territorial limits of the district may be altered only by order of the commission. 312.220. Districts may be consolidated or dissolved only by order of the commission. 312.230, 312.240. No such provisions or conditions can be found in the Act of 1947.

(4) Finally, in oral argument before this court, Michelas argued the equities of the case; that his large investment and labor that went into his furnishing of service to a portion of the Meadows Addition to the City of Las Vegas under what appeared to him to be an exclusive franchise so long as he complied with all rules and regulations of the Public Service Commission was being lost to him through no fault of his own; that this loss was the result of the deliberate action of the Water District in invading his territory; that equity could be done to all parties by the Water District's condemnation of Michelas' property for a fair compensation, or that at the least the Water District should be compelled to apply to the Public Service Commission for a certificate, under proceedings at which Michelas' objections

could be heard. The Act of 1947 under which the Water District was incorporated presents, under the authorities cited, a complete answer. The wisdom of the legislation is a matter beyond our concern, and, as aforesaid, its validity has not been questioned.

Reversed with costs to appellant.

■■■■■

The record on appeal includes briefs of the parties in the district court. They have no proper place in the record and appellant will not recover costs for including them.

PIKE, J., and ZENOFF, D. J., concur.

McNAMEE, J., having disqualified himself, the Governor commissioned Honorable David Zenoff, Judge of the Eighth Judicial District, to sit in his place.