*J. T. Terry,* for plaintiff.
*C. A. Giles* and *Edward R. Hines,* for defendant.

GARDNER *v.* CITY OF BRUNSWICK.

No. 14738.  December 1, 1943.

*Reese, Scarlett, Bennet & Gilbert,* for plaintiff.

*Conyers, Gowen & Conyers,* for defendant.

WYATT, Justice. ■ The plaintiff raised certain constitutional questions in the court below as to the contract entered into by the City of Brunswick under the terms of which the meters were purchased, and sought to enjoin the city from complying with the terms of the contract. It was conceded in the oral argument before this court by counsel for the plaintiff in error that the contract had been fully executed and that the purchase-price of the meters had been paid. Thérefore that question is moot.

■ The question as to whether a municipality has legal authority to install and use mechanical meters for the purpose of enforcing its parking regulations is a new one before this court. The initial question for consideration is whether the City of Brunswick

was possessed of authority to enact the ordinance authorizing the installation and use of mechanical parking meters. The State of Georgia, through the delegation of police powers to the City of Brunswick, had empowered and authorized, "that the said mayor and council shall have authority and power, from time to time, to make, ordain and establish such by-laws, ordinances, rules and regulations as shall to them appear necessary for the security, welfare, convenience and interest of said city, and the inhabitants thereof, and for preserving the health, morals, peace, order, and good government of the same." Ga. L. 1872, pp. 151, 154, sec. 11. By the terms of section 14 of said act the mayor and council were authorized to open, lay out, and establish new streets, alleys, lanes, ways, or squares, and were given other enumerated powers sufficiently broad to invest in them the general supervision and control over the streets, alleys, lanes, ways, and squares located within the limits of the city. This court, in construing the charter powers of a municipality, which were in effect similar to the powers possessed by the City of Brunswick, held that the provisions "were sufficient to confer police power to enact ordinances for the convenience and safety of the public, and to that end establish and maintain streets and sidewalks and exercise full and complete control over them, including regulation of traffic thereon." *Howell v. Board of Commissioners of Quitman,* 169 *Ga.* 74 (149 S. E. 779). It must be admitted that the automobile has introduced into police law many questions affecting the lives, health, happiness, personal and property rights, and general welfare, safety, and protection of the people, all of which have to be considered, safeguarded, and defined according to the particular facts in each case. This court is committed to the proposition that the municipalities of Georgia have authority generally over their streets to regulate the parking of automobiles thereon, and, under certain conditions, even to prohibit entirely the parking of automobiles on certain streets in congested areas. An ordinance providing that "no taxicab, motorbus, hack, or other vehicle for hire shall park on any street within the fire limits of the City of Atlanta longer than to discharge or take on passengers, unless in actual service, except in front of railroad stations, and except that three taxicabs or hacks, for the exclusive use of the patrons of hotels, shall be allowed to park either in front or on the side of hotels where permission is obtained in writing

from the proprietor of such hotel . . no hotel proprietor can give permission to park in front of any place of business occupying the store on the ground floor facing the street," was held to be valid against the objection that it was unreasonable and confiscatory. *Sanders* v. *City of Atlanta,* 147 *Ga.* 819 (95 S. E. 695). An ordinance entirely prohibiting the operation of motor-busses, jitneys, or jitney-busses on certain streets of a city has been upheld. *Schlesinger* v. *City of Atlanta,* 161 *Ga.* 148 (129 S. E. 861). Similarly, an ordinance prohibiting parking on certain streets in the daytime, between hours specified in the ordinance, and making these streets non-parking during the night, was upheld. *Borough of Atlanta* v. *Kirk,* 175 *Ga.* 395 (165 S. E. 69). It must therefore be concluded that the City of Brunswick, under the provisions of its charter, had the power and authority to regulate and control traffic and parking on its public streets, and consequently was au-. thorized and empowered to enact the ordinance in question.

The plaintiff in error contends that the ordinance is discriminatory. An examination of the ordinance discloses that it applies alike to all persons and property owners located within the area described in the ordinance. "It is only in cases where laws are applied differently to different persons under the same or similar circumstances that the equal protection of the law is denied." *Baugh* v. *City of LaGrange,* 161 *Ga.* 80 (2a) (130 S. E. 69). See also *Toney* v. *Macon,* 119 *Ga.* 83, 87 (46 S. E. 80); *City of Valdosta* v. *Harris,* 156 *Ga.* 490 (4) (119 S. E. 625); *Georgia Southern & Florida Ry. Co.* v. *Adkins,* 156 *Ga.* 826 (120 S. E. 610). In the case of *Borough of Atlanta* v. *Kirk,* supra, Mr. Presiding Justice Beck said: "The power of courts to declare an ordinance void because it is unreasonable is one which must be carefully exercised. When the ordinance is within the grant of power conferred upon the municipality, the presumption is that it is reasonable, unless its unreasonable character appears upon its face." He then quotes with approval from 2 Dill. Mun. Cor., 928, § 591, as follows: "If the ordinance is not inherently unfair, unreasonable, or oppressive, the person attacking it must assume the burden of affirmatively showing that as applied to him it is unreasonable, unfair, and oppressive." As pointed out above, the ordinance in question is applicable alike to all persons and property owners affected within the area described in the ordinance, and under the authorities cited, it cannot be held to be discriminatory.

The third and last consideration involves the contention of the plaintiff that "the City of Brunswick has no authority to enter into a business as outlined in said ordinance." The law seems to be clear that a regulatory measure of this kind may produce such revenue as is reasonably necessary to defray the expenses connected with its operation. The petition makes no contention that the city will derive revenue from the parking meters in excess of what is necessary to defray the expenses connected with the operation of the meters, and the burden being on the petitioner to point out wherein the ordinance is invalid, it fails in this respect. In this connection, it is well to keep in mind that while the public has an absolute right to the use of the streets for their primary purpose, which is for travel, the use of the streets for the purpose of parking automobiles is a privilege, and not a right; and the privilege must be accepted with such reasonable burdens as the city may place as conditions to the exercise of that privilege. The authority to make and enforce rules for the use of streets necessarily includes the right to restrict the parking of cars on the public streets when necessary. The city should have a wide latitude in selecting the means to be adopted. A regulatory ordinance relating to the parking of cars will be presumed to be justified by local conditions, unless the contrary clearly appears. Much should be left to the city's discretion. Except for the right of ingress and egress, an abutting-owner's rights in the street are the same as any other member of the traveling public. The ordinance under consideration does not interfere with the right of ingress and egress of the complaining property owner. The burden of the complaint is that the parking meters will incidentally interfere with the operation of her hotel business because her customers will object to paying for the privilege of parking in the public street. The city may provide meters to measure the time of parking as well as it may measure such time by other means.

While the validity of parking meters is a new question in this State, the validity of ordinances providing for such meters has been decided by the courts of a number of States, and with the lone exception of Alabama, in so far as we have been able to determine, they have been unanimous in upholding the validity of such ordinances. County Court of Webster County *v.* Roman, 121 W. Va. 381 (3 S. E. 2d, 631); Owens *v.* Owens, 193 S. C. 260 (8 S. E.

2d, 339) and the collection of cases there cited on the subject. It is interesting to note that in the Alabama case, City of Birmingham v. Hood-McPherson Realty Co., 233 Ala. 352 (172 So. 114, 108 A. L. R. 1140), that being the case holding the parking-meter ordinance invalid, the city's right to the streets was derived from a deed containing a provision that the streets should not be used for any private or individual purposes except with the consent of the grantor.

There was no error in refusing the injunction and in sustaining the general demurrer dismissing the petition.

*Judgment affirmed. All the Justices concur.*