36 So.2d 673

**CITY OF DECATUR v. ROBINSON et al.**

**8 Div. 431.**

Supreme Court of Alabama.

June 24, 1948.

Rehearing Denied July 31, 1948.

Peach, Caddell & Shanks, of Decatur, for appellant.

112

Julian Harris and Norman W. Harris, both of Decatur, for appellees.

A. A. Carmichael, Atty. Gen., L. E. Barton, Asst. Atty. Gen., J. Frank Livingston, of Tuscaloosa, and Lawrence K. Andrews, of Union Springs, for Alabama League of Municipalities, amicus curiae.

GARDNER, Chief Justice.

This cause was originally assigned to Mr. Justice BROWN for preparation of the opinion. Upon consideration of the cause in consultation the opinion of Justice BROWN did not meet the approval of the Court. The following opinion was originally prepared as expressive of the writer's individual views. But in consultation the members of the Court, other than Justice BROWN, concurred in the views therein expressed and it is of consequence, adopted as the opinion of the Court. Reference is made to the full statement of the case as found stated by Justice BROWN, and we adopt such statement as our own. It appears above. The opinion adopted by the Court is as follows:

Though taking no part in City of Birmingham v. Hood–McPherson Realty Co., 233 Ala. 352, 172 So. 114, 108 A.L.R. 1140 yet I was impressed at the time, and am still of the opinion, the decision should have been otherwise. It should not now be followed. That case was decided something more than eleven years ago, and it was then admitted, as disclosed by the opinion, that the automobile had introduced into police law many questions affecting the lives, health, happiness, personal and property rights and general welfare of the public, all of which have to be considered, safeguarded and defined according to the facts entering into each case; citing Frost & Frost Trucking Co. v. Railroad Commission of State of California, 217 U.S. 583, 46 S.Ct. 605, 70 L.Ed. 1101, 47 A.L.R. 457. In this latter case one of the dissenting justices made note of a like observation

when he said in the statement of his views that the states are now struggling with new and enormously difficult problems incident to the growth of automobile traffic. That decision was rendered twenty-two years ago, and since that time, as is known by all men, the difficulties have greatly multiplied.

It is simply a question of exercise of police power possessed by municipalities in the matter of regulation of traffic on the streets of the cities. As we have often observed, the limits of the state's police power has never been fixed nor its boundaries defined. It is a governmental function and is coextensive with the necessities of the case and the safeguard of the public interest. In State ex rel. Wilkinson v. Murphy, 237 Ala. 332, 186 So. 487, 121 A.L.R. 283, speaking to this question of police power, we observed that time moves on and government takes account of the measured steps of progress with the application of police power to meet new public needs. And we there observed the ruling of the Supreme Court of the United States in Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016, wherein the court, among its varying reasoning, referred to regulations of traffic in the present day of complex conditions which before the advent of automobiles would have been condemned as fatally arbitrary and unreasonable.

I can find nothing in either section 235, or section 89, of our Constitution which stands in the way of exercise of this police power of municipalities.

See Gilsey Buildings Inc. v. Incorporated Village, 170 Misc. 945, 11 N.Y.S.2d 694; Webster County Court v. Roman, 121 W. Va. 381, 3 S.E.2d 631; Harper v. City of Wichita Falls, Tex.Civ.App., 105 S.W.2d 743; City of Columbus v. Ward, 65 Ohio App. 522, 31 N.E.2d 142; Foster's, Inc., v. Boise City, 63 Idaho 201, 118 P.2d 721, 726, and City of Louisville v. Louisville Automobile Club, 290 Ky. 241, 160 S.W.2d 663.

This matter of parking automobiles on down town public streets is a privilege, not an absolute right. The city may employ the means reasonably necessary to make effective the regulatory ordinance and to safeguard the restricted parking privilege granted. These parking privileges are now regulated by ordinance in nearly every city, and necessarily so. A time limit is now prescribed and the police officer is under duty to see that it is enforced. No one can question a moment the right of the city to employ additional police officers to augment the regular force sufficiently to enforce ordinances of this character. Instead, the city in the exercise of a choice of means elects to employ these parking meters, which are nothing but mechanical policemen, to aid in large part the accomplishment of that purpose; they are efficient and economical and enable the authorities to pass the cost of providing parking privileges on to those who enjoy them.

The ordinance shows upon its face that it is to regulate traffic and keep the traffic as liquid as it is reasonably possible. True, the city may not use the exercise of the police power as a revenue measure. But the ordinance here in question discloses that whatever revenue is derived therefrom is to be devoted to the cost of necessary inspection, police surveillance and incidental expenses that are likely to be imposed upon the public in consequence of this parking privilege.

Nor should the court seek to avoid an ordinance by nice calculation of the expense of enforcing police regulation. A case here much in point was that of the Supreme Court of Florida, decided in 1936, State ex rel. Harkow v. McCarthy, 126 Fla. 433, 171 So. 314. A number of decisions are cited therein which support this conclusion.

A still more recent case (Owens v. Owens, Mayor, et al., 193 S.C. 260, 8 S.E. 2d 339) from the South Carolina Supreme Court, decided in 1940, fully supports the validity of this ordinance and contains much valuable discussion of the question and answers the minority opinion here. It is noted in that case that ordinances of this nature have been tested in a number of states and upheld. I am persuaded it is now the time and occasion for our state to recognize the necessity for action and to keep pace with the progressive march

of events in the complexity of our modern life. A number of ordinances dealing with municipal authority in regard to traffic problems of states are found illustrated in the Notes as set out in 72 A.L.R. 229; 108 A.L.R. 1152 and 130 A.L.R. 316. According to this record parking meters had only been invented in the year 1935. Perhaps, and very naturally, neither the need nor the use for such was then apparent. As observed, City of Birmingham v. Hood-McPherson Realty Co., supra, was determined in the year 1936.

Since the usefulness of parking meters and the necessity for some regulation in this regard have become apparent, the validity of ordinances concerning them have been tested in quite a number of other states. The only states thus far disapproving, so far as we have been able to discover, are Alabama and some two or three other states. But a number of states, some twenty in number, have approved. We cite them here for further reference. They are as follows: City of Louisville v. Louisville Automobile Club, 290 Ky. 241, 160 S.W.2d 663; Ex parte Duncan, 179 Okl. 355, 65 P.2d 1015; Cassidy v. City of Waterbury, 130 Conn. 237, 33 A.2d 142; Gilsey Buildings Inc. v. Incorporated Village of Great Neck Plaza, 170 Misc. 945, 11 N.Y.S.2d 694; Affirmed, 258 App.Div. 901, 16 N.Y.S.2d 832; Kimmel v. City of Spokane, Wash. 109 P.2d 1069; Hendricks v. City of Minneapolis, 207 Minn. 151, 290 N.W. 428; Foster's, Inc., v. Boise City, 63 Idaho 201, 118 P.2d 721; Owens v. Owens, 193 S.C. 260, 8 S.E.2d 339; Harper v. Wichita Falls, TexCiv.App., 105 S.W.2d 743; In re Opinion of the Justices, 297 Mass. 559, 8 N.E.2d 179; Clark v. City of New Castle, 32 Pa.Dist. & Co. R. 371, 30 Mun. 65; County Court, etc. v. Roman, 121 W.Va. 381, 3 S.E.2d 631; City of Columbus v. Ward, 65 Ohio App. 522, 31 N.E. 2d 142; State ex rel. Dreyer v. Brekke, N.D., 28 N.W.2d 598; City of Bloomington v. Wirrick, 381 Ill. 347, 45 N.E.2d 852; Gardner v. City of Brunswick, 197 Ga. 167, 28 S.E.2d 135; De Aryan v. City of San Diego, 75 Cal.App.2d 292, 170 P.2d 482; Morris v. City of Salem, 179 Or. 666, 174 P.2d 192; and Newark v. New Jersey, 133 N.J.L. 513, 45 A.2d 139.

The dissenting opinion states that the ordinance is contrary to the state law. On the contrary, I am of the opinion that it is in full harmony therewith. The question of regulating or prohibiting parking vehicles within the limits of the respective municipalities and to provide for the regulation of traffic by means of officers or semaphores or other signaling devices on any highway where traffic is heavy or continuous are specifically provided for in Title 36, Sec. 32, Code 1940. Like authority may be found in general provisions of sections 455, 489 and 750, Title 37, Code 1940.

In Dorminey v. City of Montgomery, 232 Ala. 47, 166 So. 689, the holding was that the installation of traffic lights by the city was a governmental function for the negligent exercise of which the municipality was not liable. We recognized in that case that traffic signal lights were designed to regulate the use of streets, and that although there was no statute enjoining upon the municipality the duty to install such signal, yet if it is done, it is in the exercise of discretionary power possessed by the municipality to conserve the safety of the public using such streets. It was considered in that authority that as a matter of course the city had the right in the exercise of its police power to install these signal lights. They were but stationary policemen, and no adjoining property owner could complain that his property was destroyed or injured by the installation of such a signal. Clearly no property owner could well complain of the installation of a fire plug, mail box, public utility poles and the like, if erected by consent of the city. Such a situation may well be likened unto the parking meters here considered. They are but stationary policemen, as we have said, concerning which the property owner cannot complain as an invasion of any of his rights under section 235 of our Constitution. We can find no analogy between such a situation and those in the authorities cited in the dissenting opinion.

Even if it be assumed that the installation of such a light, or, as here, a parking meter, might work some slight inconvenience to the adjoining property owner, yet if it is a reasonable and proper ex-

ercise of the police power, such owner cannot complain. Or, as observed in Pickett v. Matthews, 238 Ala. 542, 192 So. 261, where there is no violation of a right, no action can be maintained. For, as the opinion observed, the police power is on some occasions necessarily superior to personal and property rights, and not infrequently yielded to the general welfare.

But we forego further discussion. Being fully convinced that the ordinance here is within the proper exercise of the police power of a municipality and is not prohibited by any constitutional or statutory provision, we think the decree rendered was laid in error. It is accordingly reversed and decree here rendered declaring the validity of the ordinance here involved.

Reversed and rendered.

All the Justices concur, except Justice BROWN, who dissents.

BROWN, Justice (dissenting).

The appellant's contention, stated in the verbiage of the brief, is "considering that over the period of the last ten years the complexities of modern travel have so greatly involved and necessitated the contracting of certain of our constitutional principles in favor of the justification of laws and regulations enacted in some aspects of the police power for the public welfare in this matter of parking meters, and considering further that the opinion is unsound in some of its legal concepts, we have filed this suit and taken this appeal, seeking to overturn City of Birmingham v. Hood–McPherson, supra."

The language of Bronson, Chief Justice of the Court of Appeals of New York, adopted by this court in Sadler v. Langham, and Moore v. Wright & Rico, 34 Ala. 311, 335, speaking through Justice Stone a decade short of a century ago, answers the foregoing contention. It was there said:

" * * * We adopt as our own the following language of one of New York's ablest and purest judges: * * *

" 'Believing, as I do, that the success of free institutions depends on a rigid adherence to the fundamental law, I have never yielded to considerations of expediency in expounding it. There is always some plausible reason for the latitudinarian constructions which are resorted to for the purpose of acquiring power—some evil to be avoided, or some good to be attained, by pushing the powers of the government beyond their legitimate boundary. It is by yielding to such influences that constitutions are gradually undermined, and finally overthrown. My rule has ever been to follow the fundamental law as it is written, regardless of consequences. If the law does not work well, the people can amend it; and inconveniences can be borne long enough to await that process. But, if the legislature or the courts undertake to cure defects by forced and unnatural constructions, they inflict a wound upon the constitution which nothing can heal. One step taken by the legislature or the judiciary, in enlarging the powers of the government, opens the door for another, which will be sure to follow; and so the process goes on, until all respect for the fundamental law is lost, and the powers of the government are just what those in authority please to call them.' Oakley v. Aspinwall, 3 N.Y. 547, 568." 34 Ala. at page 335.

After considerable elaboration and citation of authority, appellant insists that the municipality may authorize, permit or install steel posts or standards along the margin of the sidewalk—as provided in the ordinance—to support said meters and maintain the same in the exercise of the police power and as an incident thereto may impose on owners of vehicles a charge, fee or tax for the privilege of parking in the spaces designated by the markings on the curb or otherwise, and to enforce the collection of such charge, fee or tax by criminal process.

To undertake to analyze all the cases cited would be a burdensome task without material benefit to the parties, the court or the people. However, as a basis for differentiation, we note that in some of the cases cited the right of the abutting property owner was not involved nor considered. In others where such rights were considered, they rested on the general principles of the common law, unaided by constitutional pronouncement. The case of State ex rel. Harkow v. McCarthy, 126

Fla. 433, 171 So. 314, upon which the appellant places much store, was an appeal by McCarthy from an order of the circuit court remanding him to custody in a habeas corpus proceeding, he having been convicted of a violation of a parking ordinance. The appeal was on the record without bill of exceptions and, concluding the opinion, the court observed:

"There being no evidence properly brought before us to the contrary, the presumption is that the judgment of the trial court was justified by the evidence adduced at the hearing. If it had been shown by competent evidence before the circuit judge either that the streets on which parking meters have been installed under this ordinance are not streets where the traffic is sufficiently heavy to require any parking regulations of this sort, or that the city was making inordinate and unjustified profits by means of the parking meters, and was resorting to their use not for regulatory purposes but for revenue only, there might have been a different judgment." 171 So. at page 317.

In Decker v. Goddard, 233 App.Div. 139, 251 N.Y.S. 440, the ordinance was annulled on the ground that it was unreasonable and in derogation of the resident's common law right. The right of the abutting property owners in Cassidy v. City of Waterbury, 130 Conn. 237, 33 A.2d 142, was rested upon the principles of common law, as will more fully appear by examination of New York, N. Y. & H. R. Co. v. Wheeler, 72 Conn. 481, 45 A. 14. That case also involved the interpretation of a state statute and its application.

The scope of the common law was most aptly stated by Mr. Justice Somerville in City Council of Montgomery v. Maddox, 89 Ala. 181, 7 So. 433, as was also the effect of the constitutional amendment, now § 235 of the Constitution of 1901. The holding of Mr. Justice Somerville was expressly adopted and followed in Town of Avondale v. McFarland, 101 Ala. 381, 13 So. 504, and the Townsend cases (City Council of Montgomery v. Townsend, 80 Ala. 489, 2 So. 155, 60 Am.Rep. 112; Id., 84 Ala. 478, 4 So. 780) were overruled. The rule of the McFarland case, supra, was again reaffirmed and followed in McEachin v. City of Tuscaloosa, 164 Ala. 263, 267, 51 So. 153, where damages were awarded for removing a shade tree growing between the street curb and the sidewalk. The court observed:

"* * * If a house is denuded of the shade trees in front of same, and it is thereby made less comfortable, or its beauty is impaired, so as to affect its use and enjoyment, and thereby render it less valuable, we see no reason why the owner, would not be entitled to recover the damages sustained, whether his right of ingress and egress is affected or not. The question is: Was the pecuniary value of the property injured, as a result of the action of the defendant in the improvement or enlargement of its street? If it was, the plaintiff has a cause of action, and the amount of her recovery would be the difference in the value of her property before and after the improvement or enlargement of the street.

"Nor do I think the authorities relied upon in the minority opinion (rested on the police power) in conflict with the holding in this case. They are inapt, as they were decided either under the common law or in states with no constitutional provision like ours. Indeed, as was said in the Maddox Case, supra: 'I do not discover precisely the same language in the Constitution of any other state, except those of Alabama and Pennsylvania.' * * *" 164 Ala. at pages 266, 267, 51 So. at page 154.

In differentiating this line of cases from Alabama Power Co. v. City of Guntersville, 235 Ala. 136, 177 So. 332, 114 A.L.R. 181, then before the court, but not involving the rights of abutting property owners, it was observed that the court in the Maddox case, supra, had before it a case involving the *physical disturbance of the surface of the sidewalk,* resulting in inconvenience and depreciation of the value of the property. So in the case at bar, holes were dug or drilled through the sidewalk twenty feet apart and in depth sufficient to allow the posts or standards to be permanently set in concrete, and the meter company in the contract was granted the right to tear up the sidewalk and remove said posts and meters,

the meter company agreeing to repair the damage to the sidewalk. McGowan et al. v. City of Mobile, 241 Ala. 576, 4 So.2d 161.

The common law right of the abutting lot owner "is that when the landowner lays off his land in blocks and lots, setting apart and designating certain portions as streets, with a view to establishing a town, followed by a sale of lots with reference to a map defining and delineating the streets, this is a complete dedication thereof to the use of the purchasers and the general public. 'Such dedication and its acceptance vest in the purchaser of lots the right to have the street referred to in the plan remain public, deprive the owner of the right to obstruct the street, or to pervert it to uses other than those to which it was dedicated.' Sherer v. City of Jasper, 93 Ala. 530, 9 So. 584, 585. Such dedication is perfected and made irrevocable by the sale of a single lot. By such a sale, 'every line of the survey which served to mark those parts of the site which were intended to be reserved from sale for the use of the public became unalterably fixed, dedicated to the public for all time.' Webb v. City of Demopolis, 95 Ala. 116, 126, 13 So. 289, 292, 21 L.R.A. 62.

"Such dedication is irrevocable except by constitutional legislative action or in strict pursuance of constitutional legislatively delegated authority. Highland Realty Co. v. Avondale Land Co., 174 Ala. 326, 56 So. 716. A conveyance of lots embodied in such plat passes to the grantee the fee to the median line of the street encumbered by the easement in favor of the public. Southern Bell Tel. Co. v. Francis, 109 Ala. 224, 19 So. 1, 31 L.R.A. 193, 55 Am.St.Rep. 930; Western Railway Co. v. Alabama G. T. R. Co., 96 Ala. 272, 11 So. 483, 17 L.R.A. 474; Evans v. Savannah & W. Ry. Co., 90 Ala. 54, 7 So. 758; Moore v. Johnston, 87 Ala. 220, 6 So. 50; Columbus & W. Ry. Co. v. Witherow, 82 Ala. 190, 3 So. 23; Perry v. New Orleans, M. & C. R. Co., 55 Ala. 413, 28 Am.Rep. 740.

"The fee in the land to the median line of the street or way is appurtenant to the attingent lots along the street and is not subject to alienation apart from such lots after the dedication has become complete. Nor

is it subject to vacation by legislative action without just compensation being made or provided. Chichester v. Kroman, 221 Ala. 203, 128 So. 166; Duy v. Alabama Western R. Co., 175 Ala. 162, 57 So. 724, Ann.Cas.1914C, 1119." Snead v. Tatum, 247 Ala. 442, 443, 25 So.2d 162, 163.

In Town of New Decatur v. Scharfenberg, 147 Ala. 367, 41 So. 1025, 119 Am.St. Rep. 81, involving the right of an abutting property owner on Second Avenue in the Town of New Decatur, decided in January, 1906, this court speaking through the then Chief Justice, applying what is now § 235 of the Constitution of 1901, observed:

"Whatever may be the law elsewhere, it is too well settled in this state for further controversy, 'that, under constitutional guaranties, a municipal corporation may not take or injure the property of a citizen in the exercise of its power to improve its highways without first making compensation; and the right to injunctive relief in such a case as this exists without reference to the solvency or insolvency of the municipality and regardless of the consideration that he might recover full compensatory damages in an action at law.' City Council of Montgomery v. Lemle, 121 Ala. 609, 25 So. 919; Avondale v. McFarland, 101 Ala. 381, 13 So. 504; Niehaus v. Cooke, 134 Ala. 223, 32 So. 728." 147 Ala. at page 370, 41 So. at page 1026, 119 Am.St.Rep. 81. See same case, second appeal, in 155 Ala. 651, 47 So. 95.

The pertinent provision of § 235 of the Constitution of 1901 is, "Municipal and other corporations and individuals invested with the privilege of taking property for public use, shall make just compensation, to be ascertained as may be provided by law, for the property taken, injured, or destroyed by the construction or enlargement of its works, highways, or improvements, which compensation shall be paid before such taking, injury, or destruction. * * * "

Appellant, however, insists that this section of the constitution is without application to the situation presented here. The trial lease agreement in pursuance of which the ordinance was adopted concedes that the installation and removal of the

standards or posts from the sidewalk where they are imbedded in cement will occasion damage which the meter company must repair or make compensation for, but the right of the abutting property owner is utterly ignored. It patently appears from the very statement of the agreement between the parties and the ordinance that there was a physical disturbance of the surface of the sidewalk in making the installation and likewise such disturbance will occur if such posts are removed, as provided in the trial lease contract. But this is not the only damage that is contemplated by the constitution as appears from the utterances of the court in the McFarland case, supra. The evidence clearly shows that the effect of installing the standards and metors will clutter up the physical appearance of the sidewalk, making the abutting owner's property less comfortable, its beauty impaired, so as to affect its use and enjoyment and render it less valuable. In the McEachin case, supra, in the face of similar circumstances, this court observed: "We see no reason why the owner, would not be entitled to recover the damages sustained, whether his right of ingress or egress is affected or not." McEachin v. City of Tuscaloosa, supra, 164 Ala. at page 266, 51 So. at page 154. This holding was reaffirmed in City of Birmingham v. Graves, 200 Ala. 463, 76 So. 395.

The clear effect of the ordinance, when considered in connection with the Duncan Meter Corporation's "Parking Meter Trial Lease," is to grant to the Duncan Meter Corporation, organized and existing under the laws of the State of Illinois (not then qualified to do business in Alabama), the right to install said meter standards and meters by excavating or drilling holes in the sidewalk in front of respondent's properties two feet from the curb, so as to set said standards or posts in cement (which sidewalk and street paving, it may be assumed, were laid at the expense of the abutting property owner under the local improvement statutes), with the right of the meter company to remove said posts under certain conditions named in the lease, without first making compensation for the damage occasioned by such instal-

lations and removal and without regard to the owner's right of egress and ingress by vehicle or on foot, and further to obstruct and occupy and clutter up the sidewalk in the parking zones designated in the ordinance already marred by telephone poles, electric wire poles, street signs and other unsightly objects.

The right of the abutting owner to driveways and walkways into his private property is left to the judgment or discretion of the chief of police, whether it be business or residential property. Rights resting on the discretion of the public official are without substance under our system of government of law, excluding government of men. City of Shreveport v. Herndon, 159 La. 113, 105 So. 244.

In the face of these facts we discover no sound reason why the provisions of § 235 of the Constitution of 1901 do not apply. The City of Decatur is a municipal corporation and the scheme which the ordinance proposes construed in the light of the contract, contemplates and affects an "enlargement of its works, highways, or improvements," within the letter and spirit of § 235 of the constitution as repeatedly interpreted and applied by the decisions of this court.

As sustaining the right so to use the streets, the appellant cites the following statutes: Title 37, §§ 455, 489 and 750, Code of 1940. The first mentioned section provides that municipal corporations may from time to time adopt ordinances and resolutions *not inconsistent with the laws of the state* to carry into effect or discharge the powers and duties conferred by this title. Section 489 provides that towns or cities have power to regulate the running of railroad trains or engines or automobiles and electric motors within the corporate boundaries and to prohibit the standing thereof on or across the streets or highways within the corporate boundaries. Section 750 provides that any city or town shall have power to regulate and license the use of carts, drays, wagons, coaches, omnibuses and every description of carriages and vehicles kept for hire, and to license and regulate the use of the streets of the town or city by persons who

use vehicles or solicit or transact business thereon.

As said in one of the authorities cited in briefs supporting appellant's theory: "* * * Long ago it was held by Lord Ellenborough in the English case of Rex v. Cross, 3 Campbell 224, that 'no one can make a stable-yard of the King's highway'; and this sound principle may be brought down to modern times and conditions by saying that no one can make a garage of the public streets." Maxwell & Quinn Realty Co., Inc., v. City of Columbia, 193 S.C. 260, 8 S.E.2d 339, 342.

And in Lewis v. Ebersole, 244 Ala. 200, 12 So.2d 543, 544, it was held: "If a designated place on parking lot was assigned to automobile owner for his exclusive use, without any assumption of dominion or custody of automobile by operator of lot, the status would be that of a 'lease.'"

In Duckworth et al. v. Town of Robertsdale, 248 Ala. 432, 28 So.2d 182, it was held, that a deed which "purported to convey a segment of a public street, was ultra vires and void, and building constructed and maintained thereon was a 'public nuisance', abatable at the instance of municipality by bill in equity, and municipality was not required to resort to an action at law."

In City of Birmingham v. Holt, 239 Ala. 248, 194 So. 538, it was held that a city had no inherent power to grant a franchise or privilege to a private individual to use its street for any purpose. And in Phenix City v. Alabama Power Company, 239 Ala. 547, 195 So. 894, it was held that, "municipal corporations can enjoy no powers which the legislature itself does not possess, unless they are conferred by the constitution, since, in general, municipal corporations derive their powers from the legislature."

Section 32, Title 36, Code of 1940, subsections (d) and (e) are cited to uphold the contract and ordinance involved in this litigation. These sections provide:

"(d) Local authorities shall have power to provide by ordinance for the regulation of traffic by means of traffic officers or semaphores or other signaling devices on any portion of the highway where traffic is heavy or continuous and may prohibit other than one way traffic upon certain highways and may regulate the use of the highways by processions or assemblages.

"(e) Local authorities may also regulate or prohibit the parking of vehicles within the limits of their respective municipalities, and may also regulate the speed of vehicles in public parks and shall erect at all entrances to such parks adequate signs giving notice of any such special speed regulations."

There is nothing in either of these subsections which authorizes a municipality to grant to a private individual the right to occupy any part of the sidewalk or street for the purpose of collecting revenue to satisfy an obligation of a municipality nor do they expressly or by necessary implication authorize the levying of a charge, tax or fee against individuals for the privilege of parking in the public street or along the margin thereof.

In Decatur Transit v. City of Gadsden, 249 Ala. 314, 31 So.2d 339, 341, it was observed: "* * * Of course, it is well understood, as established by all the authorities, that though the power to tax is very generally granted to municipalities, yet this power is not possessed by the municipal corporation unless it has been plainly and unmistakably granted to it either by expressed terms or by necessary implication. * * *" The municipality is not authorized to levy such tax under police power. Beeland Wholesale Co. v. Kaufman, 234 Ala. 249, 174 So. 516.

The appellant cites § 220 of the Constitution of 1901 upon which it seems to rely as authorizing the city to confer on a private individual or corporation the right to install posts or standards in the sidewalk. The mere fact that the city authorized the installation does not make it lawful nor does it protect the city if the rights of the abutting property owners are unlawfully disturbed. Branyon et al. v. Kirk, 238 Ala. 321, 326, 191 So. 345. When this section of the constitution is interpreted in the light of the well settled principle that the proper place for the operation of vehicles designed for speed or draft is in the speedway of the street and not upon the sidewalk, which is

set apart for the use of pedestrians, vehicles for cripples, invalids and baby buggies propelled by a pedestrian (Fielder v. Tipton, 149 Ala. 608, 42 So. 985, 8 L.R.A.,N.S., 1268, 123 Am.St.Rep. 69, 13 Ann.Cas. 1012; Hill v. Reaves et al., 224 Ala. 205, 139 So. 263; 13 R.C.L. 377, § 308), it is very clear that it has no application to obstructions or installations placed in the sidewalk nor does it attempt to authorize a municipality to convert the speedway of the street or any part thereof into a parking lot.

It is also familiar law that does not require any citation of authority that a private individual who sets up or maintains an obstruction in any part of the street calculated to produce injury or damage to one entitled to use of the street as a pedestrian is liable in damages for maintaining a nuisance. This is aptly illustrated in City of Birmingham v. Graves, supra. To cap the climax, § 89 of the Constitution of 1901 provides, "The legislature shall not have power to authorize any municipal corporation to pass any law inconsistent with the general laws of the state," and § 455, Title 37, Code of 1940, expressly interdicts the adoption of such ordinance. The right of the municipality in the exercise of its police power to regulate speed on the speedway of its streets, to prohibit longtime parking, to limit narrow streets to oneway traffic and in the case of public emergency to temporarily close streets and deny traffic thereon is nowhere disputed. This principle was recognized in the decree of the trial court.

The parking meters and the posts or standards installed in the sidewalk set in cement in the meter zones are to remain the property of the meter company, a private corporation, and the city obligates itself to supervise and operate said meter system and to cover the revenue garnered by the meters into an earmarked fund and withdrawals are prohibited until the cost of installation and any taxes to which the meter system may be subjected are refunded to the meter company, after which the net revenue garnered is to be divided by the city and the meter company on the basis of 50% to each. When and if the rent accumulates in amount to something over $27,000, the aggregate fixed price of the meters, the city may elect to apply the accumulation going to the meter company in discharge of its obligation and take title to the meter system in itself. It requires no evidence or argument to show that said 50% includes the profits accruing to the meter company in the transaction. The ordinance provides that this fund is to be raised by a charge in the nature of ground rent or license levied against private individual owners who may use the parking space designated on the curbing in front of the installed meters. In the event the city does not so elect, the rents, accumulated and paid to the meter company become its property and it has reserved the right to take up the meters and remove them, limiting their liability to the repair of the holes from which said posts or standards are removed.

It is insisted by appellees that the power to engage in or supervise such system for gain of a private corporation or individual has not been conferred on the City of Decatur and it is not within the scope of the police power for the legislature to so authorize.

In the light of the allegations of the bill and answers and the admission in the stipulation of facts, the purpose and design of the ordinance is to raise revenue in the first instance to pay for installation of the meters, rent to the meter company for the use, taxes if levied against the system and on the happening of certain contingencies to use the accumulation therefrom to discharge the city's obligation and take the meters over for its use, after which the revenues are to be devoted to the purchase of parking lots, to the improvement of streets and alleys and other improvements which the city may see proper to make.

The authority of the municipality to impose such charge or license is not expressly conferred by statute nor does it exist by necessary implication. Decatur Transit Co. v. City of Gadsden, 249 Ala. 314, 31 So.2d 339; Boyd v. Selma, 96 Ala. 144, 11 So. 393, 16 L.R.A. 729; New Decatur v. Berry, 90 Ala. 432, 7 So. 838, 24 Am.Rep. 827; Baldwin v. City Council of Montgomery, 53 Ala. 437; City of Birmingham v. Hood-McPherson Realty Co., supra; Davis v.

Petrinovich, 112 Ala. 654, 21 So. 344, 36 L.R.A. 615; Van Hook v. City of Selma, 70 Ala. 361, 45 Am.Rep. 85. Moreover, the funds anticipated far exceed the amount necessary for mere police supervision. In re Opinion of the Justices, 297 Mass. 559, 8 N.E.2d 179. I, therefore, am of the opinion that the installations in the sidewalk violate the property rights of the abutting property owners, compensation for injury inflicted not having been first made, and that said ordinance also violates § 89 of the Constitution because it is inconsistent with the general laws of this state. The ordinance is ultra vires and void. New Decatur v. Berry, supra; Edwards House Co. v. City of Jackson, 138 Miss. 644, 103 So. 428, 42 A.L.R. 625; Alabama Red Cedar Co. v. Tennessee Valley Bank, 200 Ala. 622, 76 So. 980; 19 R.C.L. p. 1061, § 350.

The facts and issues in the instant case clearly differentiate it from City of Birmingham v. Hood–McPherson Realty Co., supra. That case in so far as it holds that when there is physical disturbance of the sidewalk in making installations the property rights of the abutting owners are violated and just compensation must first be made is sound and is reaffirmed.

In my opinion, the holding of the majority in this case ignores the constitutional rights of the abutting property owners and the settled construction of § 235 of the constitution and its purpose. It also, without constitutional or legislative authority granted to municipalities, approves the levying of a burdensome tax upon the few for the benefit of a private business corporation and authorizes such corporation to establish and set up its business on the sidewalks of the municipality dedicated to the use of pedestrians, cripples and babies. It not only establishes a rule for such an enterprise in congested districts but the rule of the opinion is applicable to all streets in the municipality including the residential districts.

The statement in the majority opinion that the police power of municipalities has not been defined and has no limits is not the law. "In accordance with general rules as to the extent of the powers of municipalities the general rule is well settled that, in the absence of constitutional provision, municipal corporations have only such police powers as are granted to them by the legislature, and exercise only such police powers as are granted in express terms, as are necessarily or fairly implied in or incident to powers expressly granted, or as are indispensable to accomplish the objects and purposes of the corporations. They cannot exercise police powers simply on the ground that such powers are convenient. In the absence of such express or necessarily implied power from general statutes, such as general acts affecting municipalities, or from specific charter provisions for a particular municipality, or from a combination of general statutes and charter provisions, or by direct constitutional grant, municipal corporations cannot lawfully exercise the police power. As has been pointed out, it is not necessarily authority for the validity of a municipal police ordinance that a state statute analogous thereto has been sustained as valid. The legislature possesses all the powers of the state not denied to it by the state and Federal Constitutions or not vested in other departments of the state government, while the city council has no power except what has been delegated to it by law. Although the legislature may pass any law not prohibited by the organic law, the municipal council can pass only such ordinances as it has been authorized to pass." 37 Am.Jur. § 281, pp. 911, 912, 913.

The rule thus stated is in accordance with our decisions cited supra.

I, therefore, for the reasons stated in my opinion, respectfully dissent.

## On Rehearing.

### GARDNER, Chief Justice.

We gather from brief of learned counsel for appellees that they have an impression the majority view was expressed hastily and without regard to the numerous insistences urging support of the ruling of the trial court. Numerous cases noted in the majority opinion discussed the questions here presented, and were cited with the view of brevity, the desirability of which in opinions is more impressed upon the writer as time passes;

and the conclusion was reached that the citation of these authorities, which we think over-whelmingly sustains our view, would suffice for all purposes. These cases were read and noted, and to them we may add City of Phoenix v. Moore, Ariz.; 113 P.2d 935; Van Hook v. City of Selma, 70 Ala. 361, 65 Am.Rep. 85; City of Andalusia v. Fletcher, 240 Ala. 110, 198 So. 64, citation of which had been omitted.

As to one other question (that covering dedication) not stressed on application for rehearing, we may cite City of Birmingham v. Graham, 202 Ala. 202, 79 So. 574; 16 Am.J. 373; Wills v. City of Los Angeles, 209 Cal. 448, 287 P. 962, 69 A.L.R. 1044.

We gather from the argument that exception is taken to the failure of the opinion to indulge in more detailed discussion of the question of revenue. Authorities are noted in the opinion to clearly indicate, in the first place, that it is difficult, if not impossible, to anticipate the revenue to be derived from parking meters. In the second place, this court has observed in City of Andalusia v. Fletcher, supra, that the action of the municipal body will not be disturbed by the courts unless it appears there was manifest abuse of the police power, and that the courts are not to scrutinize the amount of the license tax too narrowly. These observations are in harmony with the expressions of the Oregon Supreme Court upon parking meter ordinances in Hickey v. Riley, 162 P.2d 371, 377, decided in 1945, as follows:

"We think that it is beyond question that the ordinances were enacted primarily for traffic regulation and not for revenue. The fact that, in the operation of the meters, a revenue has resulted, does not, in itself, classify the ordinances as revenue measures. State v. McFall, 1924, 112 Or. 183, 229 P. 79. The right to apply the revenue not only to the narrow and restricted purposes of the mere installation, operation and maintenance of the meters, but also to the broad purposes of general traffic control where authorized by the enabling ordinances, has been upheld in a number of well-reasoned decisions."

That opinion quotes abundantly from other authorities. Suffice it to say the foregoing quotation meets with our approval.

We forego further discussion, but we thought this brief response was appropriate in view of the earnest insistence of counsel for appellees. We are content with the original holding, and the application for rehearing, of consequence, will be denied.

Application overruled.

All the Justices concur, except BROWN, J., who dissents.