*Northern District*
#6758

## ESTHER GOLD, et al

### v.

## CITY OF NEWTON

Argued: June 10, 1968   Decided: Sept. 10, 1968

*Present:* Brooks, P.J. Connolly, Parker, J.J.

Case tried to *Cullen, J.* in the District Court of Newton No. 17818

*Brooks, P.J. This is an action of tort* begun in the Superior Court of Middlesex County and remanded to the District Court of Newton. Plaintiff Esther Gold claims damages for injuries arising out of alleged failure of defendant to keep the municipal parking lot in safe condition for patrons.

Defendant sets up various defenses, the principal one relied on being defendant's immunity from liability. Since no other defense was argued orally or by brief, we limit our consideration of the case to the legal question of municipal immunity.

Briefly, — plaintiff arrived by automobile at the municipal parking lot where the necessary coin was deposited in the meter, after which she went shopping in a nearby store. As she was returning to the car within the time limit of the meter, she stepped in a depression in the asphalt surface of the parking lot and was injured.

At the close of the testimony defendant filed the following requests for rulings:

> 1. A municipality, in the absence of special statute imposing liability, is not liable for negligent acts of its officers or employees in the performance of strictly public functions imposed or permitted by the Legisla-

ture from which no special corporate advantage, pecuniary profit or enforced contribution from individuals particularly benefited, results.

2. The operation and maintenance of the parking lot by the defendant city is a public function, and the defendant is not liable for injuries occurring thereon because of the condition of the premises, even though a fee for parking is charged. *Pierce* v. *Town of Wellesley*, 336 Mass. 517 (1957)

3. The burden is upon the plaintiff to prove the operation of the parking lot by the defendant was a commercial enterprise or one from which it derives a profit or special corporate benefit.

4. The defendant was authorized by statute to make a charge for parking in its lot, and the statute further provides what use shall be made of the income thus received. In the absence of evidence that the defendant made non-statutory uses of said income, it cannot be held that the income was a profit to the defendant or that the parking lot was a commercial enterprise. MGL c. 40, §§ 22A and 22C.

5. The fact that a charge is made or can be made in connection with a public

enterprise is not always conclusive that such enterprise is commercial in character. The question to be determined in each case is whether the monetary aspect changes the character of what would otherwise be purely a governmental function. If the income involved is insignificant, the dominating character of the undertaking as a governmental function is not changed.

*Bolster* v. *City of Lawrence,* 225 Mass. 387 (1917)

6. The public parking lot is a necessary public utility in a society which has so evolved that its functioning is dependent upon the daily movement of much of the population in motor vehicles.

*Tate* v. *City of Malden, et al,* 334 Mass. 507 (1956)

7. The evidence does not warrant a finding that the defendant was negligent.

8. The evidence does not warrant a finding for the plaintiff Esther Gold.

9. The evidence does not warrant a finding for the plaintiff Arthur Gold.

The court disposed of the rulings as follows: "Allowed ##1, 3, 4, 5, 6; Denied #2, see special findings ##7, 8, 9. The following findings of fact were made:

"The defendant is a municipal corporation. Said corporation owned and operated a me-

tered parking lot behind a block of stores in a heavy business district. It charged nominal fees ranging from one to twenty-five cents. This lot was beneficial to the corporate interests of the defendant in that it enhanced the value of the taxable business district. The plaintiff was injured and suffered damages as a result of a defect that had existed an unreasonable length of time.

"Damages . . . total disability 2 (two) weeks; partial disability 3 (three) weeks; medical bills $93.00; transportation $24.-00."

The report was stated to contain all the evidence material to the questions reported, including all evidence most favorable to the plaintiff. Defendant claims to be aggrieved by the Court's denial of requests for rulings ##2, 7, 8, 9.

*There was evidence that* defendant owned, operated and maintained the parking lot in question for the use and convenience of the public. All monies collected from the parking meters in this lot were kept in a separate fund by the City of Newton and used solely for the purpose of purchasing additional municipal parking lots, the care and maintenance of the municipal parking lots, and in general for any traffic control or traffic safety purposes.

The parking meters were built to receive fees in the amounts of 1, 5, 10, and 15 cents for

twelve minutes, 1, 2, and 3 hours respectively. They would also receive a quarter for three hours as a matter of convenience for the motorist who was without the correct amount of smaller change.

The following sections of G.L. c. 40 are pertinent:

Section 22A authorizes cities and towns to install parking meters on ways within its control and to appropriate money for the acquisition, installation, maintenance and operation of parking meters. They may establish fees which "shall not exceed in the aggregate the necessary expenses incurred by such city or town for the acquisition, installation, maintenance and operation of parking meters and the regulation of parking and other traffic activities incident thereto."

Section 22B grants authority to any city or town to acquire off-street parking areas . . . and may pay for such acquisition or lease, including the cost of policing, constructing or reconstructing, surfacing, operating and maintaining such areas and facilities, and including any debt incurred by such acquisition, in whole or in part from any receipts from said parking meters. . . .

Section 22C. Any city or town having installed parking meters under the provisions of Section 22A may install parking meters in municipally owned off-street parking lots and may use any receipts from parking meters so in-

stalled for the purpose of purchase of additional parking lots, the care and maintenance of the same, and in general for any traffic control or traffic safety purposes, including payment for public liability coverage in connection with the use of said municipally owned off-street parking lots.

Section 22E provides for lease of air space above off-street municipal parking areas.

The broad issue here and one not yet decided in this Commonwealth is: "May a municipality such as the city of Newton carry on a metered off-street parking business without incurring liability where the negligence of employees causes injury to a member of the public legitimately using the parking area?" The answer to this question depends primarily on whether, in conducting this kind of activity, the city can be said to be acting in its proprietary, as distinct from its governmental capacity.

The immunity doctrine, of course, originated in the ancient assumption that the King could do no wrong. Later this doctrine was modified by common law or legislative act whereby the King supposedly consented to being sued. That is the basis upon which the state, or a subdivision thereof such as a city, may be sued for defects in the highway. See G.L. c. 84, § 15. In that instance the municipality is considered an agent of the state.

A city may acquire private property only for a public purpose. The degree to which mo-

tor vehicles have taken over transportation has caused the resulting problem of highway congestion to become a matter of exceeding public concern. This is recognized in practically all states. See *McSorley* v. *Fitzgerald,* 359 Pa. 264, *Wayne Village President* v. *Wayne Village Clerk,* 323 Mich. 592, and more specifically in our own statutes, G.L. c. 40, § § 22A, and following, herein already set forth, and in our Supreme Court decisions. There is no doubt that a municipality has the right to acquire land to operate an off-street parking project. *Tate* v. *Malden,* 334 Mass. 507, *Pierce* v. *Wellesley,* 336 Mass. 517, *Lowell* v. *Boston,* 322 Mass. 709, (the Boston Common case.)

Chief Justice Rugg in *Bolster* v. *Lawrence,* 225 Mass. 387 discusses the general problem of municipal activities and the law governing liability. In that case plaintiff was injured while making use of a bathhouse run by the city without charge to the public. The Chief Justice said in part:

> "The general principles of law by which claims for liability in tort against cities and towns must be determined are well established. The municipality, in the absence of special statute imposing liability, is not liable for the tortious acts of its officers and servants in connection with the gratuitous performance of strictly public functions, imposed by mandate of the Legislature or undertaken voluntarily by its permission, from which is derived no special

corporate advantage, no pecuniary profit, and no enforced contribution from individuals particularly benefited by way of compensation for use or assessment for betterments.''

... ''The difficulty lies not in the statement of the governing principles of law, but in their application to particular facts. The underlying test is whether the act is for the common good of all without the element of special corporate benefit or pecuniary profit. If it is, there is liability; if it is not, there may be liability.''

The Chief Justice enumerates certain municipal activities under which there is no liability, such as the conduct of schools, the maintenance of a city hall, of a public park, for the acts of police officers or members of the fire department, or those in charge of celebrations, playgrounds, and public amusements, etc. He cites pertinent Massachusetts cases.

He also enumerates cases where there is liability such as in the negligent operation of a municipal water department or a sewer system, or in the maintenance of electric and gas lighting plants for the use of which rates are charged. Since these cases are set forth by Rugg, C.J. in some detail it is unnecesary to record them here. *Bolster* v. *Lawrence* is a famous case. It has been cited in courts all over the United States. It is referred to in recent Massachusetts decisions, *Whalen* v. *Worcester*

*Electric Light Company,* 307 Mass. 169, *Horton*
v. *North Attleboro,* 302 Mass. 137, *Molinari* v.
*Boston,* 333 Mass. 394, *Cole Drug Company of
Massachusetts* v. *Boston,* 326 Mass. 199 and
most recently in *Thomas Adm.* v. *Potomac Electric Power Company and District of Columbia,*
also Wynn, Jr. against the same defendants
266 F. Supp. 687 (1967), but with disapproval.

A somewhat different, but equally pertinent
definition of the distinction between governmental and proprietary activities is given by
Chief Justice Marshall in *City of Wooster* v.
*Arbenz,* 166 Ohio St., 281. Tracing the history
of municipal liability, the Chief Justice characterizes the distinction between governmental
and proprietary functions as follows:

> "In performing those duties which are
> imposed upon the state as obligations of
> sovereignty, such as protection from crime,
> or fires, or contagion, or preserving the
> peace and health of citizens and protecting
> their property, it is settled that the function is governmental, and if the municipality undertakes the performance of those
> functions, whether voluntarily or by legislative imposition, the municipality becomes
> an arm of sovereignty and a governmental
> agency, and is entitled to that immunity
> from liability which is enjoyed by the state
> itself. If on the other hand there is no obligation on the part of the municipality
> to perform them, but it does in fact do so

for the comfort and convenience of its citizens for which the city is directly compensated by levying assessments upon property or where it is indirectly benefited by growth and prosperity of the city and its inhabitants, and the city has an election whether to do or omit to do those acts the function is private and proprietary."

More succinctly in *Britt* v. *Wilmington*, 236 N.C. 476 the Court, (in holding the proposed operation of a municipal parking lot to be a proprietary matter,) said:

"When a municipality is acting in behalf of the state in promoting or protecting the health, safety, security or general welfare of its citizens, it is an agency of the sovereign. When it engages in a public enterprise essentially for the benefit of the compact community, it is acting within its proprietary powers."

In holding the operation of a municipal parking area to be proprietary in nature, a North Carolina Court commented that the operation of a public parking place was essentially no different from a similar operation in private hands.

There is a twilight zone where courts in different states hold different opinions. Parking operations are in this twilight zone. For instance, in *Kappel* v. *Pittsburgh*, 77 Pittsburgh Leg. J. 288, the operation of a municipal parking lot by the city was held to be a proprietary

function. To the same effect—*Automobile Underwriters, Inc.* v. *Pittsburgh*, 44 D. and C. 63. In the latter case where the plaintiff was owner of an automobile stolen from the parking lot the Court said:

> "The tendency today is to hold the municipality liable for acts or omissions on the part of servants and employees which formerly were excused."

A New York decision, *Dunham* v. *New York*, 264 App. Div. 732; also 34 N.Y.S. 2d 289 held the city liable under circumstances similar to the Pennsylvania case, although the subject of municipal immunity was not discussed. New Jersey courts have held that operation of both metered and unmetered parking areas involved in the exercise of proprietary functions. *Nary* v. *Park Authorities,* 58 N.J. Super. 222. *Springfield* v. *Hackensack,* 68 N.J. Super. 38, 45. In *Zaras* v. *Findlay,* 176 N.E. Rep. 451 (Ohio), the city tore down a building preliminary to contracting for the operation of an off-street parking lot, in the course of which plaintiff was injured. The Court held that the defendant was acting in its proprietary capacity.

*Bedhke* v. *Chicago,* 240 Ill. App. 493 held that operating an incinerator for burning rubbish without cost to the taxpayer was held to be an exercise of a ministerial function and that the city was liable for injuries received by the plaintiff in a collision btween his automobile and a city truck.

In *Fratello* v. *Newark,* 133 N.J.L. 19 where the city had set a stanchion in a sidewalk and installed thereon a curb parking sign to indicate that the parking space was reserved for patrons of a bank, and when the bank went out of business, the city removed the sign but in so doing left a support iron sleeve so that it protruded as a stump about 1½ or 2 inches above the sidewalk, and plaintiff stumbled over it, it was held to be an act of negligence for which the municipality was liable. The Court drew a distinction between a mere omission and active negligence, but active wrong doing.

In a West Virginia case, *Shippa* v. *West Virginia Liquor Control Comm.,* 132 W. Va. 51, it was held that public corporations organized for the operation of water and power plants, swimming pools, parks and other recreational facilities are organized for purposes not strictly governmental and constitute proprietary rather than governmental enterprises for purposes of determining their liability to suit.

*Hoggard* v. *Richmond,* 172 Va. 145 involved injuries resulting from negligent operation of a municipal swimming pool for which the city was held liable.

Among cases to the contrary are *Stubbs* v. *Macon,* 1948, 78 Ga. App. 237. There the city, in paving a strip in the parking area, left a metal water meter box protruding several inches above the new pavement over which plain-

tiff caught her foot and fell. The Court held that this was a governmental function and negligence of the maintenance of the area did not constitute conduct for which the defendant was liable.

In *Johnson* v. *Jackson,* 194 Tenn. 20 plaintiff was run over by a police motorcyclist engaged in checking parking meters maintained by the city. Here again the Court held that checking meters was a governmental rather than a proprietary function and ruled that the municipality was not liable.

In *Edwards* v. *Shreveport,* 66 So. 2d 373 (La.) plaintiff sued the city for personal injuries sustained by him as a passenger in an intersection collision attributed to the city's negligence in maintaining a traffic signal light in a defective condition. Again, the Court held that this conduct was in the course of a governmental function rather than a proprietary exercise.

An Alabama case, *Decatur* v. *Robinson,* 251 Ala. 99 similarly held the regulation of traffic through parking meter ordinances to be a governmental function. Likewise in *Ashbury* v. *Norfolk,* 152 Va. 275 removal of garbage was held to be a governmental function because it affected public health.

The case before us presents an additional element, — G.L. c. 40, § 22C provides in part that the city may use receipts from parking meters for payment of public liability coverage

in connection with municipally owned off-street parking lots. This suggests that the Legislature intended thereby to make the municipality liable where previously it might not have been liable.

There are several states where indemnity bonds are authorized for covering municipal employees. One of these cases is *McGrath Building Co., Inc.,* v. *City of Bettendorf,* 245 Iowa 1386. In that case the city had granted a franchise to a public utility company to lay a gas main in a street abutting houses belonging to plaintiff. The city was aware that the main was only five inches below street grade. While operating a street grader, city employees dug deep enough into the street to damages the gas main with a result that escaping gas exploded and damaged plaintiff's property. The city had taken out insurance for their employees covering them while in the performance of their duties. The court held that purchase of an indemnity policy of this kind should not constitute a waiver of immunity by the city since it was for the protection of its own employees. A similar decision had been rendered by the New Hampshire Supreme Court in the case of *Cushman* v. *Grafton County,* 97 N.H. 32.

*Holland* v. *Western Airlines,* 154 Fed. Supp. 457, applying the law of Montana, held that in the absence of statute a city could not waive its immunity in tort by buying liability insurance.

*Taylor* v. *State,* 73 Nev. 151 holds that the State and the State University in the absence of statutory authority could not, by obtaining liability insurance, divest themselves of immunity even though the legislature had provided the money wherewith to pay for the insurance. To the same effect is *Stephenson* v. *Raleigh,* 232 N.C. 42.

The majority of decisions where indemnity bonds are provided for hold that there is thereby no waiver of immunity. It should be noted that in the case before us it is the municipality and not the employees that are insured.

In the Iowa case the Court, recognizing the argument that the law of municipal immunity is of longstanding and possibly archaic, states that "any change in such longstanding law should be by the legislature."

It is also to be noted that in some states they treat the question of waiver of immunity through the purchase of indemnity bonds as different where the activity is of a proprietary rather than a governmental nature. In some states where there is immunity, liability is limited to the amount of the indemnity bond.

A strong case on the subject of waiver of immunity is *Thomas* v. *Broadlands Community Consol. School District,* 348 Ill. 567. This was a case in which the defendant argued for immunity. The court said that the only justifiable reason for immunity of this municipal subdivision from suit in tort was the sound and

unobjectionable one that it is the public policy to protect public funds and public property and to prevent the use of tax monies to the payment of damage claims, and that there is no justification or reason for absolute immunity if the public funds are protected by insurance. This being true, the court reasoned that liability insurance ''to the extent that it protects the public funds, removes the reason for, and thus the immunity to suit.''

The same view is taken in *Marion County* v. *Cantrell,* 166 Tenn. 358 where plaintiff's minor child was killed due to the negligent operation of a school bus operated by a county board of education. The court held that the immunity doctrine did not apply since the board of education had taken out a liability policy to cover operation of the bus. This case is later followed in *Rogers* v. *Butler,* 170 Tenn. 125. Still later the Court found similarly in *Wilson* v. *Maury County Board of Education,* (1957) 42 Tenn. App. 315.

The subject of municipal immunity has been discussed under the title Municipal Corporations in several volumes of ALR, notably 52 ALR, 120 ALR, 8 ALR 2d, 26 ALR 2d, 33 ALR 2d, 68 ALR 2d. As one commentator observed, the courts are hopelessly divided in much of this field.

Two justices of the U.S. Supreme Court have commented on this diversity, Justice Butler, speaking for the court in *Trenton* v. *New Jer-*

*sey,* 262 U.S. 182, after mention of the distinction between the two categories,—governmental and proprietary—says:

"The basis for the distinction is difficult to state, and there is no established rule for the determination of what belongs to the one or the other class."

Justice Sutherland in *Brush* v. *Commissioner of Internal Revenue,* 300 U.S. 352, said in part:

"There probably is no topic of the law in which respect of which the decisions of the state courts are in greater conflict and confusion than that which deals with the differentiation between the governmental and corporate powers of municipal corporations. This condition of conflict and confusion is confined in the main to decisions relating to liability in tort for the negligence of officers and agents of the municipality. In that field, no definite rule can be extracted from the decisions."

Courts frequently point out the paradoxes involved in the decisions. Judge Cardwell in *Portsmouth* v. *Lee,* 112 Va. 419, voicing impatience at the diversity in opinion between like cases said:

"It is to be borne in mind, that it is as much the duty of a municipal corporation to take due and proper precautions for the health and welfare of its citizens, as it is to keep its streets and all parts of them in reasonably safe condition for public

travel, and the principals of law fixing the liability or nonliability of the city in damages where an injury on the street is sued for, and where the suit is for negligence of duty in the protection of health and general welfare are the same and apply alike in both cases."

. *Aschoff* v. *Evansville*, 34 Ind. App. 35, held that the business of selling and distributing water to citizens was proprietary, but that negligent pumping of water to serve its fire department in extinguishing its fires was governmental.

In *Houston* v. *Schilling*, 150 Texas 387 a garbage truck, because of deficient brakes, collided with plaintiff's auto. The truck was maintained by employees of the municipal garage. The Court held that the removal of garbage was a governmental function, but that the maintenance of the car was proprietary.

Judge Hudgins in the Hoggard case (supra p. 9) says:

"Furnishing water to the inhabitants of a municipality for domestic purposes, and furnishing water to inhabitants to be used for the purpose of public swimming and bathing are closely allied activities. Each activity tends to promote the health and happiness of its inhabitants. To hold the municipality liable for tort when engaged in one of these activities and immunity from liability when engaged in the other,

is obviously unsound. This illogical distinction with the harsh results inflicted upon the individual who has suffered personal injury through the negligence of the municipality or its servants by these activities are conducted has been severely criticized.''

We find ourselves in sympathy with Judge Hudgins' concluding statement:

"Confronted as we are by inconsistent statements in our own decisions as to what is and what is not a governmental function and a sharp conflict in the decision of other jurisdictions, we feel free to decide the question of tort arising from the activity of the municipality in maintaining an artificial swimming pool, as one of first impression.''

The U.S. District Court in *Calomeris* v. *District of Columbia,* 125 F. Supp. 266, calls governmental immunity from suit ''an obsolescent and dying doctrine.''

The U.S. District Court in *Thomas Adm.* v. *Potomac Electric Power Company and District of Columbia* and the companion case *Wynn, Jr.* against the same defendants, (supra p. 6), after an elaborate discussion of the chaotic and conflicting condition of the law says:

"In the light of the preceding discussion concerning the modern trend to limit and restrict, rather than expand, the doctrine of governmental immunity to suit in tort,

as well as because of new activities that are being undertaken from time to time by governmental bodies, this Court prefers and adopts the view that the operation of a public swimming pool by a municipality is a proprietary rather than a governmental function."

Referring to *Bolster* v. *Lawrence*, the Court remarks:

"It may be observed that the Massachusetts case was decided almost fifty years ago before the present tendency to abolish or at least limit governmental immunity to suit in tort had gained its momentum."

In certain types of cases in Massachusetts such as injury by negligent operation of a fire truck, where because a city is immune to suit action has to be brought against the employee, perhaps the operator of the truck, the general practice has been, except in the case of gross negligence by the employee, for the city voluntarily to reimburse him to the extent of any judgment. The city, therefore, in the end, even in the case of immunity, makes it possible for the injured party to recover. In that way they get around the immunity doctrine. This is a cumbersome procedure, unworthy of an agency of the state.

Taking into consideration all the factors hereinbefore discussed, in view of the artificiality of the distinction between governmental and proprietary and the unjust results that it produces and the almost universal endeavor to

get away from the doctrine, and the growing sentiment for withdrawing immunity from charitable institutions, we feel that so far as *Bolster* v. *Lawrence* is concerned, the doctrine of immunity there expressed, should not be extended to the type of case before us and that even were it technically applicable, in other words, if the *Bolster* case were on all fours with the present case, it is out of date.

We hold, in other words, that the operation of a municipal parking area is proprietary in nature and that the City of Newton is liable for negligence in its operation and maintenance of its municipal parking area. We find no error in the trial judge's findings and ruling. Therefore we enter the order — **Report dismissed.**

GERALD H. LEPLER,
  for the Plaintiff.
DAVID A. THOMAS,
  for the Defendant.